In re STATE in the Interest of GRAHAM et al.

No. 6828. Decided June 13, 1946. (170 P. 2d 172.)

**160**

See 43 C. J. S., Infants, sec. 8; 31 Am. Jur., 793.

*George B. Stanley*, of Heber, for appellant.

*Grover A. Giles*, Atty. Gen., and *Arthur H. Nielsen*, Asst. Atty. Gen., for respondent.

WOLFE, Justice.

This is an appeal from an order of the Third District Juvenile Court dismissing appellant's petition and motion which attacked the jurisdiction of said Juvenile Court in depriving appellant of the care, custody and control of his two children, Ellis Arthur Graham and Shanna Lee Graham.

The history of this case begins October, 1942, when the appellant and Iona Shields Graham Reynolds, then husband and wife, parents of the two above-named children, separated, the mother leaving the family home. Ellis Arthur Graham was kept by the father and Shanna Lee Graham was taken by the mother.

On November 10, 1942, the mother commenced a divorce action against the father in the Fourth Judicial District Court of the State of Utah, in and for Wasatch County. On December 7, 1942, said court gave the temporary custody of Ellis Arthur Graham to the father and the temporary custody of Shanna Lee Graham to the mother.

On January 29, 1943, said District Court made a new order, giving the temporary custody of the son to the mother and

the temporary custody of the daughter to the father. On March 8, 1943, a "Petition," drawn by a probation officer, was filed in the interests of the two children in the Third District Juvenile Court after the father, activated by a desire to get custody of his son Ellis, had called the attention of the Juvenile Court to the situation. On March 30, 1943, findings of fact and conclusions of law and decree were entered by the Third District Juvenile Court depriving the parents of the custody of both minor children and placing them in the foster home of Mr. and Mrs. Elmer Johnson.

On May 14, 1943, a compromise divorce decree was granted in the Fourth Judicial District Court, wherein the said district court declined to make any order regarding the custody of said minor children. On July 12, 1944, after petitions for restoration of custody had been filed by both the father and mother of said children, the Third District Juvenile Court decreed that the custody of the two children be restored to their mother and that their father continue to be deprived of same. On November 4, 1944, the father (appellant here) filed in said Juvenile Court his petition and motion aforesaid, dismissal of which is the basis of this appeal.

This is not an appeal from the judgment of the Juvenile Court on the merits of whether the children should or should not be taken away from appellant. Though appellant's petition and motion attempt to raise the questions of regularity of prior proceedings, admissibility of evidence therein, failure to give notice of certain phases of the hearings, etc., the only questions properly before this court are those which pertain to the jurisdiction of the Juvenile court. All other matters attempted to be raised by appellant's petition and motion should have been raised by appeal from the judgment of the juvenile court of March 30, 1943, or its judgment of July 12, 1944. The thirty day statutory time for said appeals (Section 14-7-33, U. C. A. 1943) had long since passed before this appeal was perfected.

We must decide:

1. Did the juvenile court have jurisdiction of Ellis Arthur and Shanna Lee Graham to declare them dependent and neglected children?

2. Did the juvenile court have jurisdiction over the father of said children to deprive him of their custody?

The juvenile courts of this state are creatures of statute and are courts of limited jurisdiction, Chapter 7, Title 14, U. C. A. 1943. They do not have jurisdiction over every minor child of this state or of every parent of a minor child. To bring a child within the power of the juvenile court as set out, defined and *limited* by the legislature, certain steps must be taken. A preliminary inquiry made under the direction of the probation department is provided for by Section 14-7-12. And a preliminary investigation of the home must be made whenever practicable and a report *in writing* filed by the probation officer. A petition must be filed as required by Section 14-7-13. Said petition to invoke the jurisdiction of the court must allege facts which would make the children either "neglected," "dependent," or "delinquent" as defined by the Legislature in Section 14-7-5. The facts found by the court must be such as to show that the children were "neglected," "dependent" or "delinquent" as defined by the Legislature; otherwise, the juvenile court is divested of jurisdiction to make any order in reference to said children except to dismiss the case and to revoke all previous orders made therein.

The statute specifies the method for the juvenile court to obtain jurisdiction over parents of children. A summons is provided for in Section 14-7-14, and the method of service is specified in Section 14-7-15. Jurisdiction of a parent may be obtained by voluntary appearance. Section 14-7-18. Or notice can be waived by a parent in the same manner that a party may waive notice in district court cases.

It is fundamental that a juvenile court may make no valid orders in reference to a child unless and until that court obtains jurisdiction of that child by complying with the statutory requirements therefor. It is just

as fundamental that a parent's right to the custody of his child cannot be determined so as to bind that parent unless and until the court obtains jurisdiction of that parent.

As juvenile courts are courts of limited jurisdiction the record of a case before such a court must affirmatively show that it had the required jurisdiction of the children and parents at the time it made determinations affecting the rights of those parties. This court on appeal will not presume jurisdiction of the juvenile court but will closely examine the record to see that the legislatively specified actions have been taken and the necessary facts are alleged and found to give said court jurisdiction in the particular case.

A mere cursory examination of the record in the case at bar would reveal even to a layman that great "liberties" have been taken with the record of this case.

On the "Petition" of March 8, 1943, the name of the county in which the court was acting has been changed from "Uintah" to "Wasatch" by erasing the typed name and writing the new name in ink. A like change was made on the "Summons and Notice," on the "Findings of Fact and Conclusions" of March 30, 1943, and on the "Decree and Judgment" of the same date. Yet on the copy of said "Decree and Judgment" which was sent to Mr. and Mrs. Johnson, to whom the custody of the children was attempted to be given by said decree, the county is designated "Uintah." The copy was sent to the Johnsons some forty-five days after the date of the decree so apparently the change in the county was made on the original paper over forty-five days after its date or the copy was incorrectly made.

The body of the "Petition" reveals that at some time the comma near the end of same was changed from a period and the words "and their custody is in question and dispute" were added by a different typewriter than that originally used. The same addition was made in the "Findings of Fact and Conclusions."

The "Summons and Notice" which is dated March 8, 1943, in addition to having the name of the county changed, has

the date the parties were to appear changed by scratching out the typewritten "12th" and adding in ink "30th." The place for appearance was changed in the same manner from "Heber" to "Provo" which, of course, is not located in Wasatch County. The "Officer's Return of Summons and Notice" which is on the reverse side of the "Summons and Notice" records the filing of the return on March 10, 1943, but records the service on Mrs. Graham on March 26, 1943.

Another "Summons and Notice" also dated March 8, 1943, and apparently practically a copy of the one which was filed with the court was served on the maternal grandparents of the children. On that "Summons and Notice" the county is designated "Heber" (no such county exists in Utah) and the date and place for the trial is there noticed to be March 17, 1943, at Heber City. The date was changed in ink from March 12th.

The "Findings of Fact and Conclusions" dated March 30, 1943, in addition to the above mentioned changes has after the words "That Arthur Graham & Iona Graham, Parents, guardian custodian" the *pencil* addition of the words "are unfit & improper parents, custodians of said children."

The same pencil addition is on the "Decree and Judgment" of the same date. However, the copy of said "Decree and Judgment" which was sent to the Johnsons does not have the pencil interlineation. The date of the postmark on the envelope which was used to send the copy to the Johnsons is May 15, 1943. Apparently, the interlineation had not been made before the copy was sent to the Johnsons some forty-five days after the decree was signed and entered.

The "Findings of Fact and Conclusions" dated March 30, 1943, also has added the phrase "a reasonable sum not to exceed the actual cost thereof." This addition is made by a different typewriter than was originally used.

None of the above additions or changes are initialed or dated. We cannot determine who made the changes or when they were made. Some of them are not merely incidental and immaterial alterations but are in matters which go to the very heart of the jurisdiction of the court.

Pleadings and other court records can be changed and added to whether the changes and additions are made by the same or a different typewriter or by interlineation in ink or pencil, (though pencil should be discouraged) or by crossing out without necessarily vitiating the documents. However, those changes must be made by the proper persons and at the proper time and under the proper authority.

A presumption of regularity exists in favor of records which come to this court for review. Deletions, interlineations and changes in the documents comprising a record are presumed to have been made before those documents were filed and acted upon or by proper amendments thereafter. This presumption of regularity must exist in order to expedite the final determination of cases and to discourage attacks on court records on merely technical grounds. The presumption is justified by the high quality of men and women who are the judges and commissioners and clerks who have the duty to make the records and the responsibility of their custody. Further, to falsify court records is a felony (Section 103-26-70, 71, U. C. A. 1943). It is reasonable to presume that those having custody of court records and all other person having access to those records will not commit a crime by falsifying same.

In the case at bar the presumption that the changes in the documents which comprise the record were regularly made is overcome and destroyed by the record itself showing that some of those changes were very probably or in fact not regularly made. Therefore, in determining whether the children or parents were ever within the jurisdiction of the juvenile court we shall disregard all changes made in the documents comprising the record which are not affirmatively shown by the record to have been regularly made.

The question then arises: Disregarding all the changes therein not shown to have been regularly made, does the "Petition" filed in this case allege, as required by Section 14-7-13, U. C. A. 1943, "briefly and in a general way the facts which bring the child [ren] within the jurisdiction"

of the juvenile court? Or, stating the question in another way: Disregarding the facts alleged by changes not shown to have been regularly made; would the children in this case be "dependent," "neglected" or "delinquent" children as defined by Section 14-7-5, U. C. A. 1943, if the facts alleged in the "Petition" were true?

The "Petition" alleges:

"* * * said Ellis Arthur Graham and Shanna Lee Graham, due to an estrangement of their parents, have been without visible means of support or adequate home provision and supervision in this, that the parents of said children are separated, & that Ellis Arthur Graham has been with his mother in various places, to wit: Springdale, Vivian Park, Heber City, and Salt Lake City, Utah, without adequate parental direction and has, as a result, not been in regular attendance at any private, or public school; and that Shanna Lee Graham has temporarily been kept under the provision of her father in the home of Elmer Johnson at Charleston, Utah, and on account [sic] of this state of affairs, these children are deemed dependent and neglected and their health and morals and training are jeopardized, *and their custody is in question and dispute.*" (Italics added.)

The words in italics were typed by a different machine than the remainder of the "Petition" and are not shown to have been added before the "Petition" was acted upon or regularly made by amendment or otherwise and therefore will be disregarded.

The legislative definitions of "dependent," "negligent" or "delinquent" children within which the allegations of this petition (disregarding the questionable part) could possibly bring these children are two of those under "neglected" children and one under "dependent" children. See Section 14-7-5, U. C. A. 1943. These definitions read as follows:

Neglected Child:

"A child who lacks proper parental care by reason of the fault or habits of the parent * * *.

"A child whose parent * * * neglects or refuses to provide proper or necessary subsistence, education, * * * or other care necessary for his health, morals or well-being."

Dependent Child:

"A child who is homeless or destitute or without proper support or care through no fault of his parent  *   *   *."

The statute requiring "the facts which bring the child within the jurisdiction of the court" to be alleged does not require all the evidentiary facts and details to be set out in the petition. Neither does it contemplate that only the bare legal or factual conclusions should be alleged. Rather the statute requires sufficient facts to be alleged so that the reader of the petition can determine whether or not the children involved would be "dependent," "neglected" or "delinquent" as defined by Section 14-7-5, U. C. A. 1943, if the facts alleged were true. It is not necessary that the petition be drawn by one learned in the law. But it should show in plain and clear language the facts or situation which reveal dependency, neglect or delinquency. An intelligent layman should be able to do that.

It is alleged the children "due to an estrangement of their parents, have been without visible means of support or adequate home provision." Then the draftsman of the petition goes on to give the details showing the non-support and inadequacy of the home provision by alleging "in this, that the parents of said children are separated." The fact of separation of parents does not show the children are without support or adequate home provision. It is apparent the draftsman alleged non-support and inadequate home provision because he thought the separation of the parents of the children showed non-support and inadequate home provision. The particularization of the allegations of non-support and inadequate provision in effect negatives those allegations because the fact particularized does not amount to non-support or inadequate home provision.

As to the boy, it is alleged he has

"been with his mother in various places, to wit: Springdale, Vivian Park, Heber City, and Salt Lake City, Utah, without adequate parental

direction and has, as a result, not been in regular attendance in any private, or public school."

Here again we have a general allegation followed by the details. The general allegation is limited by the detail alleged. The general allegation reading "without adequate parental direction" and the detail allegation reading "and has, as a result, not been in regular attendance in any private, or public school," in effect allege no more than the detail allegation alone. The fact that the boy "has  *  *  *  not been in regular attendance in any private, or public school" does not make the boy dependent, neglected or delinquent. The fact alleged is not that necessary education is not being provided. The child could have attended different schools for short periods of time and still could be attending school with fair regularity. If the allegation were that the parent moved the child so often that, in effect, the child was not obtaining an education there might be substance to the allegation but such is not made here.

As to the girl, it is alleged she "has temporarily been kept under the provision of her father in the home of Elmer Johnson." This allegation in no-wise shows neglect, delinquency or dependency within the meaning of Section 14-7-5. Rather, it negatives the previous allegation that the girl was without means of support and adequate home provision for it alleges the father is providing for her. The fact that she is being provided for by her father in the home of someone not her parent does not show neglect or dependency. See the writer's concurring opinion in *Re Bradley (Bradley v. Miller)*, 109 Utah 538, 167 P. 2d 978.

It is further alleged

"on account of this state of affairs, these children are deemed dependent and neglected and their health and morals and training are jeopardized."

These conclusions add nothing in aid of bringing the children within the court's jurisdiction.

It is our opinion that sufficient facts were not alleged in

the "Petition" to bring these children within the jurisdiction of the juvenile court as it is defined and limited by section 14-7-5, U. C. A. 1943. As that court never acquired jurisdiction of the children it could make no binding orders in reference thereto.

The jurisdiction of the juvenile court over a child is a prerequisite for the obtaining of jurisdiction of a parent of that child. It follows that the juvenile court never acquired jurisdiction of the appellant and so could not lawfully deprive him of the custody of his children.

It should be noted that it was not necessary for our decision of this case to decide the question of the propriety of the juvenile court attempting to take jurisdiction of these children and attempting to determine their custody when a divorce action (which included the question of custody of the children) was pending in the district court. This case should not be considered authority one way or the other on that question.

All acts of the Third District Juvenile Court in the case of the State of Utah In the Interest of Ellis Arthur Graham and Shanna Lee Graham must be and are set aside. Said children are released from the control of said court and their custody is as it existed before that court made any orders in reference to them. That is, their custody is as ordered by the Fourth Judicial District Court of the State of Utah, in and for Wasatch County, on January 29, 1943, to wit:

"It is ordered that the minor children, the little girl to stay in the care and custody of the father, and the little boy to stay in the care and custody of the mother, until the issues of this case [the pending divorce case between the parents] are decided."

The permanent custody of these children as between the parents should now be decided by a district court as provided by Sections 40-3-5 and 10, U. C. A. 1943. No costs allowed.

While what has been said disposes of this case, we make these further comments. In a court of limited jurisdiction

where there is no stenographic report, parties must largely rely on the integrity of the files of the court. Great care must be exercised by those who made or have custody of that record; otherwise, neither we nor the parties can place much reliance on the integrity of the record. The welfare and disposition of children is too serious a matter to all concerned to rest on a record of doubtful reliability. Furthermore, our work is unreasonably increased by confrontation with such a record. The problems which come before us are sufficiently difficult if presented by the most complete and reliable record. But when time must be spent in examining in detail every paper in the record and to weigh and ponder its reliability as a document which correctly reflects what was really done at the time it purports to have been done or which really shows the basis for a finding or a judgment, the difficulty of our task is greatly and needlessly multiplied.

LARSON, C. J., and McDONOUGH, and Wade, JJ., concur.

PRATT, J., not participating.