In re State in Interest of JOHNSON.
REMINGTON v. JOHNSON et al.

No. 6971. Decided December 17, 1946. (175 P. 2d 486.)

See 43 C. J. S. Infants, sec. 93; 31 Am. Jur. 784.

*Elias Hansen,* of Salt Lake City, and *J. Rulon Morgan,* of Provo, for appellant.

*A. Sherman Christenson* and *George S. Ballif,* both of Provo, *Grover A. Giles,* Atty. Gen., and *Zar E. Hayes,* Deputy Atty. Gen., for respondent.

Pratt, Justice.

Upon petition of the paternal grandmother a child was taken by juvenile court authorities from the mother while enroute from Provo, Utah, to California, the home of the mother and child. The petition alleges the following facts:

"To the Honorable Juvenile Court of the Third District in and for Utah County, State of Utah:

"Your petitioner *Thelma Johnson* residing at *461 South 6th East* Provo, Utah presents this petition and upon information and belief alleges: That in *Utah* County, and within the jurisdiction of this Court, the following child under the age of eighteen years, to wit: NAME *William V. Johnson, Jr.,* AGE (about) *2 (4-24-43)* RESI-DENCE *461 South 6th East, Provo, Utah,* did on the *11th* day of *January* 1946 become and is dependent, [the words 'neglected' and 'delinquent' are stricken out at this point] child, contrary to the provisions of the statutes of Utah in such case made and provided in that; that *the father of the said child is in the Armed Forces of the United States; that the child is at present living in the home of the paternal grandparents at Provo, Utah; that at the time the mother of the said child married the child's father she was still married to her second husband; that the marriage to the father was subsequently annulled; that the mother has been married at least once since said annulment; that she is financially unable to provide a fit and proper home for the said child and will not provide him with suitable or proper food and clothing or adequate medical attention; further that the child is at present wholly without legal guardianship in the State of Utah and is consequently at the mercy of friends and relatives for subsistence; that as a result of the above, he is living under conditions that are contrary to his moral and physical well being."* (All the italicized portions of the above quoted matter are filled in with a typewriter in the printed petition.)

Obviously, from the above, the petitioner is relying upon the allegation of dependency. The form of summons and

notice to parent issued by the juvenile court also excludes the word "neglected" and "delinquent." In this form the paternal grandmother is spoken of as "Grandmother and Custodian."

The jurisdiction of the juvenile court is questioned upon this appeal.

Under our code (Sec. 14-7-5, U. C. A. 1943) "Dependent Child" is defined to include:

"A child who is homeless or destitute or without proper support or care through no fault of his parent or guardian.

"A child who lacks proper care by reason of the mental or physical condition of the parent, guardian or custodian.

"A child whose custody is in question or dispute."

Our juvenile court has exclusive original jurisdiction in all cases relating to the

"neglect, dependency, and delinquency of children who are under eighteen years of age." (Sec. 14-7-4, U. C. A. 1943.)

The factual background of this case is this: Billy is the child, a son of Tina Cullom Remington and William V. Johnson. Tina Cullom, after a marriage to one Hopper (March 10, 1942) and after a marriage to one Breeze (March 15, 1942) married V. Johnson, August 2, 1942, and Billy was born of that marriage April 24, 1943. On July 21, 1943, William V. Johnson by his mother Thelma Johnson as guardian ad litem (William V. was a minor) had the marriage to Tina annulled on the ground that Tina was at the time of that marriage the wife of another—not named, however, although the marriage certificates of Hopper and of Breeze appear in the record. Nothing was said in this annulment proceeding concerning Billy. On May 6, 1945 Tina was married to one Edward J. Bauer, from whom she was divorced shortly thereafter by a Nevada divorce decree. Finally Tina was married to her present husband Mr. Remington.

When Billy was born his father and the father's family did not recognize him as William V. Johnson's son. Sub-

sequently the Johnsons concluded that Billy was William V.'s son and Thelma Johnson, Billy's paternal grandmother, became very fond of him. Billy's father is in the Naval service and unable personally to care for him but he made an allotment of $42.00 per month to Tina for Billy's support, and also sent his mother Thelma Johnson money for the baby's support when he was living with her.

The Johnsons lived in Provo, Utah, and Tina and Billy lived with Mrs. Veetch, Tina's mother, in San Fernando Valley, California. By arrangement between Tina, Billy's mother, and Thelma, Billy's paternal grandmother, Billy was permitted to visit in Provo on different occasions and in all spent quite some time with the Johnsons. Billy was taken from California to Provo for these visits by his mother some of the times and by his paternal grandmother other times, and on one occasion by a friend of this grandmother. Each time he returned to California it was in company with his mother who called at Provo for him. The mother and the paternal grandmother had disagreements over these visits, and there is quite a conflict between them as to which solicited the visits. Be that as it may, however, it cannot be said that Tina in any sense abandoned Billy, or gave indication of giving up permanently her right to his custody. She did make an attempt to enter military service, at one time, but subsequently asserted her right to the custody of Billy. There is evidence in the record that she contemplated turning him over to a nursery in California while she worked. This fact in and of itself is no evidence of any idea of abandoning the child. Both Tina and her mother worked and the nursery was a place mothers selected for their children while they worked.

Billy was with his paternal grandmother on January 12, 1946, when Tina, her mother Mrs. Veetch, and Tina's little sister came from California to get him and return him to California with them. Thelma Johnson, the paternal grandmother, was angry about having to give up Billy, but she aided in getting him ready to leave. A fiery scene occurred

and Mrs. Johnson advised Tina to see the juvenile authorities about Billy before leaving after which Tina, her mother and sister and Billy left Provo without seeing those authorities. At Payson while their bus was stopped Tina and party were taken off the bus by a police officer, their baggage searched for guns, and they were held to await the juvenile authorities from Provo. They all returned to Provo to the juvenile court, where Thelma Johnson, the paternal grandmother, took charge of Billy. Later the proceedings which are the foundation of this appeal took place. Thelma Johnson had filed the petition, above mentioned, on January 11, 1946 to prevent Billy's mother from taking him away. Over 700 pages of testimony were taken much of which is an attack upon Tina's character as to whether or not she is a proper person to have the custody of Billy.

We invite attention to a recent decision of this Court upon the question of jurisdiction of our juvenile courts; and, in particular, to that part dealing with the acquisition of jurisdiction over the child, and the pleadings necessary. The case is *In re State in the Interest of Graham et al.*, 110 Utah 159, 170 P. 2d 172, 177. We quote from that decision, referring to proper pleadings to invoke the jurisdiction of the juvenile court over the child in question:

"Rather the statute requires sufficient facts to be alleged so that the reader of the petition can determine whether or not the children involved would be 'dependent,' 'neglected' or 'delinquent' as defined by Section 14-7-5, U. C. A. 1943, if the facts alleged were true."

As indicated above Thelma Johnson's petition is founded upon dependency. The code definition of a dependent child is set out above. The petition does not allege that Billy was homeless or destitute or without proper support or care through no fault of his parent. All it says along this line is that the mother is financially unable to provide a fit and proper home for said child. This is not an allegation of the present status of the child, but is an attack upon the ability of the mother in the future to look

after him. For all that the petition alleges we do not know but that, up to the time of the filing of the petition, the mother had properly supported the baby. A parent might suddenly suffer financial reverses. That is not ground for depriving her of the custody of her child. The law contemplates a then existing condition of dependency that requires the intervention of the juvenile court. Incidentally the evidence of the case does not support any such allegation of financial disability.

Obviously the second definition of dependency set out above is not applicable to this case. This leaves us with the third ground, to wit: A child whose custody is in question or dispute. Again the petition fails in the sufficiency of its allegations. The mother is the natural guardian of the child, and nothing is shown in the petition why that guardianship or her custody no longer exists. In the face of the allegation that the child has a mother, an allegation that the child is wholly without legal guardian in the State of Utah is duplicitous and surplusage. The petition gives no indication that the custody of the child is in question or dispute. Nothing whatever is said about the mother lacking any right to custody. The custody of the child is not in question or dispute in the sense contemplated by the statute so long as it appears that the natural parent has the undisputed right to custody. When the custody is conceded to be in the parent, but action is instituted to have that custody changed to another as a protection to the child, custody is not in question or dispute as contemplated by the statute. In other words there is no need for the State to take control of such a child, as by statute the parent is given that preferential right until adjudicated otherwise. On the other hand if the child is not in custody of a natural parent and the contestants for its custody are not obligated by law to assume responsibility for its care, it is a child whose custody is in question or dispute, requiring the State to consider the child as a dependent child as defined in the third definition quoted above; and assume control over it. These illustrations are not intended to be the only possible

situations to evidence the distinction contemplated. They are merely cited to illustrate the principle applicable to the present case. There undoubtedly are other examples not material here.

It seems clear that the allegations of the petition in this case are insufficient to invoke the jurisdiction of the juvenile court. In a case like the present this failure is a serious matter, as it imposes unnecessary hardship and burdens upon a non-resident. A non-resident mother and child en-route home are summarily separated in face of the fact that our code recognizes the preferential right of a parent to the custody of the child. Sec. 14-7-31, U. C. A. 1943; Sec. 14-7-29(4), U. C. A. 1943; Sec. 14-7-18, U. C. A. 1943; Sec. 14-7-19, U. C. A. 1943; Sec. 14-7-20, U. C. A. 1943. When Billy was returned to Provo, his paternal grandmother took charge of him and the mother was deprived of his custody pending the hearing upon the merits, yet the last two sections of the code cited above contemplate just the reverse unless the Court believes there are grounds for doing otherwise. In the present case it does not appear from the record that this matter was given any consideration. There is evidence in the record that when the bus was stopped at Payson the parties were accused of kidnapping Billy. If this was the reason for depriving the mother of temporary custody it should have appeared in the record as foundation for an order by the Court. Sec. 14-7-20, U. C. A. 1943. Apparently assuming that the grandmother was the true custodian—as she is treated in the title of the summons—she was permitted to walk off with the child. No order authorizing this appears in the record.

We recognize of course that there may be circumstances where a failure to take control of a child (resident or non-resident) may do the child an immediate injustice, such as are contemplated in section 14-7-22 and section 14-7-21, U. C. A. 1943. Under such circumstances the juvenile authorities should act quickly and effectively.

Our juvenile court procedure is sufficiently flexible to

protect a child (resident or non-resident) in an emergency against ill treatment, abuse, or injury to health or morals— where immediate and summary action is required. This is evidenced by the sections just cited. We quote 14-7-22:

"Where it appears to the court on petition filed by any person who in the opinion of the court is bona fide acting in the interest of any child, that there is reasonable cause to suspect that such child under eighteen years has been or is being ill-treated, is dependent or neglected, in any place within the jurisdiction of the court, in a manner likely to cause the child unnecessary suffering, or to be injurious to its health or morals, the court may issue a warrant authorizing any probation officer or other peace officer named therein to search for the child, and to take it and detain it in a place of safety until it can be brought before the court; and the court before whom the child is brought may cause it to be dealt with in the manner provided for in this chapter. The court or judge issuing such warrant may, by issuing a separate warrant, cause any person accused of any offense in respect to the child to be apprehended and brought before the proper court, and may cause proceedings to be taken to punish such person according to law. Any person, authorized by such search warrant served upon its parent or guardian or on the custodian of the premises to search for any child and to take it and detain it in a place of safety, may enter, if need be, by force, any house, building or other place specified in the warrant, and may remove the child therefrom."

However, throughout the juvenile code repeated warnings are given as to the preferential rights of the natural parent; and of course these emergency provisions are not intended as a convenient vehicle for nullifying that preference. This was not an emergency case. It was nothing more than an effort to show that the mother of the child was not a suitable or proper person to have the custody of her child—an issue that could have been tried in the ordinary course of judicial proceedings (see the cited Graham case for that procedure in this State) without resort to emergency proceedings such as were taken here. The petition alleges no facts of an emergency nature. It is true that it might have been necessary to go to California to undertake a change of custody proceeding, but as the mother, until deprived of her right to custody, had the right to take her child to California, if she desired, those who are about to attack that

right cannot complain of such a preference incident to natural parenthood.

It seems inadvisable for this State to assume jurisdiction of the status of parent and child of non-residents except for the immediate and emergency purposes indicated. Jurisdiction once acquired remains with the juvenile court until the minor becomes twenty-one (Sec. 14-7-30, U. C. A. 1943 and *Chitwin* v. *Terry*, 107 Utah 340, 153 P. 2d 941), and may be modified from time to time as the circumstances justify. Yet to enforce orders against non-residents would be almost an impossibility. Furthermore the home and surroundings of the ward would be so remote to the control of the juvenile authorities of the state that a change in circumstances authorizing a change in control orders would be hard to prove. Of course the law did not contemplate that this State should force a change of residence of the child in order to overcome these handicaps.

However it is unnecessary for us to make a determination of the territorial jurisdictional question in this case, as the petition filed here was not sufficient to initiate the jurisdiction of this juvenile court over the child regardless of its residence.

We are of the opinion that these proceedings should be dismissed. It is so ordered and the child, Billy, is discharged to the custody of his mother, Tina Cullom Remington. Costs to appellant.

LARSON, C. J., and McDONOUGH, J., concur.

WADE, J., concurs for the reason that there was neither allegation or proof of facts sufficient to confer jurisdiction on the juvenile court to dispose of this child.

WOLFE, J., concurs limiting his concurrence to the grounds mentioned by WADE, J.