STATE of Utah, in the Interest of D.M. and N.M., persons under eighteen years of age.

Appeal of Byron MARCHANT.

No. 890098–CA.

Court of Appeals of Utah.

March 27, 1990.

Michael S. Evans (argued), Salt Lake City, for appellant.

L.G. Cutler (argued), West Valley City, for respondent N.M.

Before DAVIDSON, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Appellant, the natural father of N.M., a minor child, appeals an order of the juvenile court awarding custody of N.M. to her maternal grandmother. We affirm.

### FACTUAL BACKGROUND

D.M. and N.M., minor sisters who resided with their paternal grandmother from the time of their mother's death in 1979, retained legal counsel to draft and file a petition and motion for protective order with the juvenile court. D.M. signed the petition and verified it before a notary public. The petition alleged mental and emotional abuse of both sisters by their father and also alleged that they were neglected and dependent children. The petition and motion were filed December 8, 1987. That day, the court issued a protective order which restrained the father from any contact with his daughters and appointed his mother as their temporary guardian until a hearing could be held. A hearing was held January 5, 1988. The children appeared with counsel and their father also appeared with counsel. The court, after hearing arguments, entered a temporary order that appellant retain legal custody, but until final disposition, the sisters would continue to reside with their paternal grandmother. Appellant was restrained from physically interfering with them or attempting to remove them from that residence. Appellant and his daughters were ordered to participate in psychological evaluations. The order indicates that appellant announced his intent not to comply with the court's order.

An amended petition was filed June 22, 1988, which renewed the allegations of dependency, neglect, and abuse, specified acts of physical abuse, and renewed the request for an adjudication and custody determination. D.M. became an adult during the course of the proceedings, thus the appeal is moot as to her. Appellant did not appeal from the earlier order concerning her. A series of hearings concluded with a custody order that N.M. was a dependent child within the meaning of the statute. The court concluded that appellant's parental preference to retain custody was overcome by findings that he had no significant bond with N.M., lacked the sympathy for her that characterized a typical parent-child relationship, and had not sacrificed his personal interests for her welfare.

The unchallenged findings were as follows: N.M. was three years old when her mother died. She was about age twelve when the proceedings began. She resided exclusively with her paternal grandmother after her mother's death, never with appellant. His mother became increasingly unable to care for the children due to incidents of age. Late in 1987, he made sever-

al attempts to physically remove N.M. from her grandmother's home and force her to live in a home occupied by him and several other adult men and women. Appellant was focused on control of the relationship as it affected him without any desire to nurture the relationship or benefit N.M. Appellant had never provided any monetary support for N.M. Thus, N.M. had strong negative feelings, significant fear, and lack of trust toward her father.

Accordingly, the court concluded N.M. was a dependent child. The guardianship, care, custody and control of N.M. was awarded to her maternal grandmother. Ongoing counseling and annual reviews were ordered.

On appeal, appellant's first attack is on the jurisdiction of the court. He poses two procedural reasons why the juvenile court lacks jurisdiction to consider the matter. First, he claims that Utah Code Ann. § 78–3a–20.5(1) (1987) does not allow minors to initiate a petition for a protective order. Second, he claims that the court failed to appoint a guardian ad litem to represent his daughters as provided by Utah Code Ann. § 78–3a–20.5(3) (1987). We will examine his reasons in turn.

### THE PROTECTIVE ORDER

Utah Code Ann. §§ 78–3a–20.5 to –20.10 are the protective order provisions of the juvenile court statute. Subsection 20.5(1) states:

A person, official or institution having an interest in an abused child, as defined in § 78–3a–2, may petition the juvenile court for a protective order to prevent or restrain abuse to the child. The petition must be verified.

Utah Code Ann. § 78–3a–2(18) defines "abused child" as including a minor "who has suffered or been threatened with non-accidental physical or mental harm, [or] negligent treatment,...." The initial verified petition in this case contained allegations of mental abuse, dependency, and ne-

glect. *See* Utah Code Ann. § 78–3a–2(9), –2(15) (Supp.1989). Appellant's brief recognizes the petition as "alleging mental abuse." In his brief, appellant does not consider whether his minor daughters are "persons" within the meaning of the statute who can "petition" the juvenile court for protection from abuse or whether they have an interest in the abused child, i.e., themselves. Instead, he simply argues that minors cannot file and maintain lawsuits absent statutory authority and cites *Ortega v. Salt Lake Wet Wash Laundry*, 108 Utah 1, 156 P.2d 885, 889 (1945). There, a minor filed a civil complaint for damages arising out of personal injuries which she sustained while working for a laundry. The only issue on appeal was whether the Workmen's Compensation Act was the exclusive remedy for an illegally employed minor injured during the course of employment. Here, we have an entirely different statute and proceeding, i.e., a protective order proceeding pursuant to the juvenile court statute. The statute specifically authorizes a person "having an interest in an abused child" to petition for a protective order. There is no prohibition as to the age or qualifications of the person who may petition, whether adult, minor, etc. The only qualification is an interest in an abused child. Appellant admits that this petition has allegations of mental abuse to a child, namely, his daughters. Appellant's allegedly abused daughters have the paramount and primary interest in these particular children, i.e., themselves. Who would possibly have a greater interest in their welfare and protection than these girls? No one. Certainly, appellant would not argue that his daughters are not persons.

The only requirement concerning the form of the petition for a protective order is that it be verified. Appellant apparently believes his daughters are incompetent to verify factual statements made on personal knowledge because they are minors.[1] The affiant, his sixteen-year-old daughter, per-

---

1. Appellant attempts to challenge the petition "on the grounds that the children have no standing to sue" him. But appellant cites us only section 78–3a–20.5(1) and the *Ortega* case as support for that assertion. Actually, appellant has challenged their competency to place their need for protection before the juvenile court.

formed the function of a witness as to the facts stated in the petition.

"All persons, without exception, ... who, having organs of sense, can perceive, and, perceiving, can make known their perceptions to others, may be witnesses." Utah Code Ann. § 78–24–1 (1987). "Every person is competent to be a witness except as otherwise provided in the Utah Rules of Evidence." Utah Code Ann. § 78–24–2 (1987). There is no exception regarding minors in the Utah Rules of Evidence. We note that a child victim of sexual abuse under the age of ten is a competent witness allowed to testify without prior qualification in any judicial proceeding. Utah Code Ann. § 76–5–410 (Supp.1989). D.M., appellant's sixteen-year-old daughter, was clearly competent to verify the petition. We conclude that D.M. was a "person" having an interest in an abused child who may verify a petition to the juvenile court for a protective order under section 78–3a–20.-5(1). We believe this finding to be in accord with the stated purpose of the juvenile court act:

> It is the purpose of this act to secure for *each child coming before the juvenile court such care, guidance, and control,* preferably in his own home, *as will serve his welfare and the best interests of the state;* to preserve and strengthen family ties whenever possible; to secure for any child who is removed from his home the care, guidance, and discipline required to assist him to develop into a responsible citizen, to improve the conditions and home environment responsible for his delinquency; and, at the same time, to protect the community and its individual citizens against juvenile violence and juvenile lawbreaking. To this end this act shall be liberally construed.

Utah Code Ann. § 78–3a–1 (1987) (emphasis added) (repealed by Utah Laws 1988, ch. 14 § 1; now see Utah Code Ann. § 78–3a–1(3) (Supp.1989) (juvenile court has jurisdiction, powers, and duties to "adjudicate matters that relate to abused, neglected, and dependent children and to provide care and protection for these children by placement, protection, and custody orders.")). *See In re Tanner,* 549 P.2d 703, 705 (Utah 1976); *Ballard v. Buist,* 8 Utah 2d 308, 333 P.2d 1071, 1073 (1959) (the protection with which the law cloaks an infant should not be used by others as a weapon against the infant).

The juvenile courts of this state have entertained petitions by all sorts of persons where the care, guidance, and control of a child were brought before the court. In *State ex rel. Izatt,* 572 P.2d 390 (Utah 1977), the juvenile court and district court simultaneously entertained a dependency and neglect petition by relatives of a child's deceased mother and a habeas corpus petition by the father. In *State ex rel. Johnson,* 110 Utah 500, 175 P.2d 486 (1946), a dependency petition by the child's paternal grandmother was acted upon. In *State ex rel. Graham,* 110 Utah 159, 170 P.2d 172 (1946), the court proceeded with the petition drawn by a probation officer at the request of the child's father. The appellate court stated that it was not necessary for the petition to be drawn by one learned in the law—an intelligent layperson should be able to prepare a petition setting forth sufficient facts of dependency, neglect, or delinquency. *Id.,* 170 P.2d at 177. In *In re Olson,* 111 Utah 365, 180 P.2d 210 (1947), the child's status was alleged to be virtually the same as N.M.'s status here. Maxine Hardy petitioned the court alleging that Judith Olson, a niece, was a dependent and neglected child because her mother was dead and her father was not caring for her.

Here, the court acted on an appropriate request for protection by issuing an appropriate protective order for the care of the children and setting the matter for early hearing. After hearing, the court issued a temporary custody order and retained jurisdiction to adjudicate the allegations of neglect and dependency and, if necessary, enter appropriate orders for the care and custody of the children. The petition was amended once during the course of the proceedings and several hearings were held prior to final disposition. Once the court acquired jurisdiction, its jurisdiction continued. N.M. still remains within the jurisdiction of the juvenile court. *See* Utah Code Ann. §§ 78–3a–16(1)(c)(i), –22 (Supp.1989).

Next, we turn to appellant's contention that the court's order must be reversed due to defective guardian ad litem arrangements for N.M. His argument is two-fold. First, he claims that section 78–3a–20.5(3) is mandatory and requires the court to appoint a guardian ad litem to represent the child in the proceeding. He asserts that no specific order appointing a guardian ad litem was ever entered by the court. Second, he claims that, even if there was a procedurally proper appointment, it was "totally inconsistent with the underlying purposes for guardian ad litem appointment." We will consider appellant's contentions in turn.

Section 78–3a–20.5(3) regarding protective orders states, with our emphasis:

> After the petition is filed, the court *shall* appoint a guardian ad litem to represent the child, *if* the court considers the appointment necessary for the welfare of the child. The county attorney shall represent the interest of the state.

The word "shall" in the first phrase is often construed as mandatory. But appellant has chosen to ignore the second qualifying phrase beginning with the word "if". That phrase makes the appointment discretionary with the court in a protective proceeding. The trial court evaluates the necessity for a guardian ad litem with the welfare of the child in mind. In this case, the court performed that evaluation and concluded:

> [I]t was the court's feeling at the time that there was no reason to appoint a separate Guardian ad Litem to represent the interests of these children because they were being represented in this matter by an able attorney, who was here to represent their interests.

We agree with the court's conclusion. Section 78–3a–44.5, which concerns appointment of guardians ad litem in other types of juvenile court proceedings, contains the usual discretionary word "may." Subsection (1) states: "The court may appoint a guardian ad litem to represent the best interests of a child involved in a case before the court." There was no need to appoint a guardian ad litem in the dependency and neglect phase of the instant proceedings. The children had able representation for their protection. The statute does not require the court to make the appointment in every proceeding.

Appellant's second argument begins, "Guardian ad litems [sic] that are appointed by the court to represent a juvenile are paid by the state." He cites section 78–3a–44.5(3), which provides, in part: "The costs of a guardian ad litem appointed in juvenile court cases of child abuse, neglect, or dependency are borne by the state." From this, appellant concludes that, because the children's counsel was not paid by the state, "the children in this case did not have the independent representation required by Utah law necessary to make the decision as to their best interests." Neither the children nor anyone other than appellant has complained about their representation, and the court found it able. We think appellant is not the proper person to complain about the quality of the representation the children received. Appellant relies on the language of *JWF v. Schoolcraft*, 763 P.2d 1217, 1220 (Utah Ct. App.1988) that "the best decision will be reached if *each interested person* has his (or her) case presented by *counsel* with undivided loyalty." (Emphasis added). He argues that the children did not have loyal independent counsel because the state did not pay for the services and the children did not have funds to pay. He surmises that the children's counsel was actually beholden to family members or friends who paid counsel's fees or secured his services. The record does not support this concern. During the course of the proceedings the children's counsel appeared before the court on eight occasions; the last two appearances consisted of four and one-half days of hearings. The court had ample opportunity to observe the conduct of N.M.'s counsel. The court found that "counsel has represented no person other than the minor child." We agree.

## THE CUSTODY ORDER

Appellant's second attack on the final order is that the order amounts to a de facto termination of his parental rights without due process. Appellant's brief on

this point is a mishmash of legal and factual arguments. His principal factual argument is that the evidence does not support the court's finding that N.M. was a dependent child. We decline to pursue that argument because appellant has failed to comply with our requirements in this type of challenge. The challenge to a factual finding must be conducted in two steps: (1) appellant must first marshal all the evidence that supports the finding, and (2) then demonstrate to us that, despite this evidence, the finding is so lacking in support as to be "against the clear weight of the evidence" and, thus, clearly erroneous. *Doelle v. Bradley*, 784 P.2d 1176, 1178 (Utah 1989); *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989). Marshaling of the evidence, a requirement that applies to appeals from juvenile court, *see State ex rel. P.H. and M.H.*, 783 P.2d 565 n. 1 (Utah Ct.App.1989), is a prerequisite to our consideration of the challenge. *See Grayson Ltd. Partnership v. Finlinson*, 782 P.2d 467, 471 (Utah 1989); *Fitzgerald v. Critchfield*, 744 P.2d 301, 304 (Utah Ct.App.1987).

Since appellant has completely failed in this regard, we cannot entertain this issue.

■ Appellant's principal legal arguments focus on the "strawman" which he attempts to place in our field of view, i.e., that this is a "termination" order. Thus, he attacks the custody order as though it were a termination of his parental rights. Accordingly, his grounds are not well-plowed. Appellant states this is a termination order because: (1) he is not required to pay child support except for health and accident insurance; (2) his visitations with the child are to be conducted as the child desires (a provision which he stipulated to), so he has no enforceable visitation right; (3) he was relieved of his right to consent to counselling of N.M.; and (4) he cannot dictate his child's religious affiliation.

First, we note that this proceeding was never considered by anyone to be for termination of appellant's parental rights. Utah Code Ann. § 78–3a–48 (1987) governs termination.[2] Subsection 48(2) states that termination cannot be ordered without a hearing held specifically on the question of terminating the rights of the parent. No ter-

---

**2.** Termination of parental rights—Grounds—Hearing—Effect of order—Placement of child—Voluntary petition of parent.

(1) The court may decree a termination of all parental rights with respect to one or both parents if the court finds either (a), (b), (c), or (d) as follows:

(a) that the parent or parents are unfit or incompetent by reason of conduct or condition which is seriously detrimental to the child;

(b) that the parent or parents have abandoned the child. It is prima facie evidence of abandonment that the parent or parents, although having legal custody of the child, have surrendered physical custody of the child, and for a period of six months following the surrender have not manifested to the child or to the person having the physical custody of the child a firm intention to resume physical custody or to make arrangements for the care of the child;

(c) that after a period of trial, during which the child was left in his own home under protective supervision or probation, or during which the child was returned to live in his own home, the parent or parents substantially and continuously or repeatedly refused or failed to give the child proper parental care and protection; or

(d) has failed to communicate via mail, telephone, or otherwise for one year with the child or shown the normal interest of a natural parent, without just cause.

(2) A termination of parental rights may be ordered only after a hearing is held specifically on the question of terminating the rights of the parent or parents. A verbatim record of the proceedings must be taken and the parties must be advised of their right to counsel. No hearing may be held earlier than ten days after service of summons is completed inside or outside of the state. The summons must contain a statement to the effect that the rights of the parent or parents are proposed to be permanently terminated in the proceedings. The statement may be made in the summons originally issued in the proceeding or in a separate summons subsequently issued.

(3) Unless there is an appeal from the order terminating the rights of one or both parents, the order permanently terminates the legal parent-child relationship and all the rights and duties, including residual parental rights and duties, of the parent or parents involved.

(4) Upon the entry of an order terminating the rights of the parent or parents, the court may (a) place the child in the legal custody and guardianship of a child placement agency or the department of public welfare for purposes of adoption, or (b) make any other disposition of the child authorized under § 78–3a–39. All adoptable children shall be placed for adoption.

mination hearing was held. Section 78–3a–39 authorizes the court to make certain specified dispositions in adjudications other than those for termination. Subsection 39(2) authorizes placement of the child in the legal custody of a relative or other suitable person. Here, custody was placed with the child's maternal grandmother, who was found to be a suitable person. That disposition was consistent with the meanings of "legal custody" and "guardianship of the person" set forth in Utah Code Ann. § 78–3a–2(13) and –2(14) (Supp. 1989).[3] The order merely deprives appellant of custody as defined in section 78–3a–2(10)[4] and does not terminate his parental rights:

> Termination of parental rights means the permanent elimination of all parental rights and duties, including residual rights and duties by court order.

Utah Code Ann. § 78–3a–2(21) (Supp.1989). The order does not terminate any residual parental rights, defined in subsection 2(18), and is not permanent. To the contrary, the order provides for annual review; thus, all provisions are temporary. We conclude that the order is a legal custody disposition and not a termination of parental rights.

We consider appellant's remaining arguments to be without merit.

The order of the juvenile court is affirmed.

DAVIDSON and ORME, JJ., concur.

---

(5) The parent-child relationship may be terminated upon voluntary petition of one or both parents if the court finds that the termination is in the best interests of the parent and the child. This termination with respect to one parent does not affect the rights of the other parent.

3. "Legal custody" means a relationship embodying the following rights and duties: the right to physical custody of a child; the right and duty to protect, train, and discipline him; the duty to provide him with food, clothing, shelter, education, and ordinary medical care; the right to determine where and with whom he shall live, and the right, in an emergency, to authorize surgery or other extraordinary care.

Utah Code Ann. § 78–3a–2(14) (Supp.1989). "Guardianship of the person" includes, among other things, the authority to consent to marriage, to enlistment in the armed forces, and to consent to major medical, surgical, or psychiatric treatment. "Guardianship of the person" includes legal custody, if legal custody is not vested in another person, agency, or institution.

Utah Code Ann. § 78–3a–2(13) (Supp.1989).

4. " 'Deprivation of Custody' means transfer of legal custody by the court from a parent or the parents or a previous legal custodian to another person, agency, or institution." Utah Code Ann. § 78–3a–2(10) (Supp.1989).