1999 UT App 268

STATE of Utah, in the interest of K.G.C.,
a person under eighteen years of age.

T.G. and S.G., Appellant,

v.

State of Utah, Appellee.

No. 981632–CA.

Court of Appeals of Utah.

Sept. 23, 1999.

T.S.G. & S.G., St. George, Appellant Pro Se.

Jan Graham, Atty. Gen., and Annina M. Mitchell, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before WILKINS, P.J., and BILLINGS, and JACKSON, JJ.

## OPINION

BILLINGS, Judge:

¶1 T.G. appeals from an order of the juvenile court denying his motion to dismiss him from juvenile court proceedings regarding his daughter, K.G.C. We affirm, but in doing so, we clarify the scope of the juvenile court's order.[1]

## BACKGROUND

¶2 The juvenile court first adjudicated K.G.C. as within the jurisdiction of the court at a hearing on a marijuana possession charge on December 10, 1996. K.G.C. was sixteen years old and unmarried at the time. Prior to the hearing, K.G.C.'s parents, T.G. and S.G., received a "Petition and Notice" alerting them of the charges and the time and date of the hearing. The notice instructed them to "appear with [K.G.C.]" at the hearing. Further, if they failed to appear, a summons would issue. K.G.C. and her parents appeared at the hearing. The juvenile court found K.G.C. within its jurisdiction, but held the charges in abeyance.

¶3 K.G.C. married R.C. on May 2, 1997, when she was sixteen years old. Her parents consented to the marriage. She changed her name from K.G. to K.G.C., reflecting her marriage.

¶4 The parents were next notified of juvenile court proceedings on July 15, 1997. They received another "Petition and Notice," charging K.G.C. with shoplifting, giving false information, and breaking curfew, and setting a hearing date of July 28, 1997. The charged events allegedly took place on April 11, 1997, before K.G.C. married. However, the parents received the Petition and Notice after K.G.C.'s marriage. The notice again instructed them to appear at the hearing with K.G.C. and noted that failure to do so would result in the issuance of a summons.

¶5 Neither K.G.C. nor her parents appeared at the July 28 hearing. The court entered a not guilty plea on K.G.C.'s behalf. The court also ordered the parents to "notify the Court as to why they didn't appear at today's hearing or they will be found in contempt." The record does not show that the court ever actually found the parents in contempt.

¶6 On or about September 18, 1997, the parents received a "Notification of Hearing" alerting them to K.G.C.'s trial date of October 14, 1997. The notice again instructed that "you are to appear with [K.G.C.] for this hearing," although it did not specify a summons would issue for failure to appear. This notice was sent to a West St. George Boulevard address, rather than to the Beech Street address of the previous notices.

¶7 Neither K.G.C. nor her parents appeared at trial. The court found K.G.C. guilty, assessed fines against K.G.C., and issued a pick-up order for her.

¶8 K.G.C.'s parents were notified of further proceedings by a "Summons" dated June 22, 1998, attached to a petition asserting new charges against K.G.C. This summons was delivered to the Beech Street address. The summons stated, "you are notified of this matter and summoned to personally appear with the child for an arraignment hearing .... If you fail to appear, the county sheriff will personally summons you to court, which may be punishable as contempt of court." The petition alleged charges of theft, occurring on or about March 7, 1998, almost a year after K.G.C. had married. The summons set the date for hearing on July 8, 1998.

¶9 On June 30, 1998, K.G.C.'s parents filed a motion asking that the court dismiss them from the juvenile court proceedings. The motion included information that K.G.C. had married and thus was no longer a minor under Utah Code Ann. § 15-2-1 (1996). At the hearing on July 8, which the parents

---

1. T.G. is the only true appellant as he is representing himself and cannot represent his wife. The orders and issues, however, are the same for both parents.

attended, though K.G.C. did not, the parents provided further information about K.G.C.'s marriage, but had no current address for her. Additionally, they notified the court that K.G.C. had received no notice of the proceedings because she did not live at the parents' home and had not lived there for over a year. Notice was sent only to the parents' address, rather than the address K.G.C. listed on the citation.

¶ 10 The court rescheduled the arraignment to provide time to send notice to K.G.C. The court instructed that notice be sent to the address on the citation and that K.G.C.'s name be changed to reflect her marriage. The court noted that the parents wanted no further involvement with the proceedings regarding K.G.C., but did not rule on their motion to be dismissed from the proceedings.

¶ 11 Finally, on August 3, 1998, the parents received another "Notification of Hearing" setting a new date for K.G.C.'s arraignment on August 12. This notice identified separate addresses for K.G.C. and her parents, but still contained the same language as before: "[Y]ou are to appear with K.G. for this hearing." Notice of the arraignment was sent both to the parents' address and to the address K.G.C. gave on the citation.

¶ 12 Neither K.G.C. nor her parents appeared at the arraignment on August 12. The juvenile court ruled from the bench, finding K.G.C. guilty and denying T.G.'s motion to be dismissed. In its comments from the bench, the court stated: "The court has reviewed the law and has found that [the parents] are liable and responsible under Utah state law in certain respects with regard to a child under eighteen."

¶ 13 In its order filed August 26, the juvenile court found K.G.C. guilty in absentia and imposed a fine on K.G.C. The court also denied the parents' motion to be dismissed from the proceedings, stating in its findings and conclusions, "the court has reviewed the law and finds that the Juvenile's parents are still responsible in matters regarding their child, K.G.C." The parents now appeal this order, specifically complaining about the language that they remain "responsible" for their emancipated child. However, they do not claim that the court has no jurisdiction to summon them to appear and to assist the court in dealing with K.G.C.

## ISSUE AND STANDARD OF REVIEW

¶ 14 The sole issue is whether the juvenile court exceeded its authority by including language in its order which could be read to subject T.G. to liability for his daughter, who has been emancipated by marriage. This matter turns on statutory interpretation, and thus is a question of law reviewed for correctness. See A.E. v. Christean, 938 P.2d 811, 814 (Utah Ct.App.1997).

## ANALYSIS

### I. Jurisdiction Over K.G.C.

¶ 15 As an initial matter, it is clear that the juvenile court had jurisdiction over K.G.C. after her marriage. The court's jurisdiction is provided in Utah Code Ann. § 78–3a–104 (Supp.1999). Among other grants of jurisdiction, the juvenile court has exclusive jurisdiction in proceedings regarding "a minor who has violated any ... law or municipal ordinance or a person younger than 21 years of age who has violated any law or ordinance before becoming 18 years of age." Utah Code Ann. § 78–3a–104(1)(a) (Supp.1999). For the purposes of the Juvenile Court Act, minor is defined as "a person under the age of 18 years." Id. § 78–3a–103(1)(p).

¶ 16 The court's jurisdiction is strictly age linked, and does not end merely because a person attains majority status when that person was previously within the court's reach. See, e.g., id. § 78–3a–121(1) ("Jurisdiction of a minor obtained by the court through adjudication ... continues ... until he becomes 21 years of age."). Furthermore, though marriage affects other legal relationships, it does not impact the continuing jurisdiction of the juvenile court. See id. § 78–3a–121(2)(b). Thus, K.G.C. remained within the jurisdiction of the juvenile court even after her marriage.

### II. Jurisdiction Over K.G.C.'s Parents

¶ 17 The juvenile court attains jurisdiction over a minor's parents only by first attaining jurisdiction over the minor. See

Utah Code Ann. §§ 78–3a–110, –112 (Supp. 1999) (providing notice, summons, and contempt provisions specifying method of obtaining jurisdiction over parents). "The jurisdiction of the juvenile court over a child is a prerequisite for the obtaining of jurisdiction of a parent of that child." *In re Graham,* 110 Utah 159, 170 P.2d 172, 178 (1946). Once a child is within the court's jurisdiction, the court can exercise jurisdiction over the parents, require the child's parents to appear with him or her in court,[2] and determine the rights of both child and parent. *See* Utah Code Ann. §§ 78–3a–104, –110, –112 (Supp. 1999); *cf. Graham,* 170 P.2d at 178 (holding juvenile court could not determine parents' custody rights when court had not acquired jurisdiction over parents).

¶ 18 Here, the court has jurisdiction over K.G.C., and thus has jurisdiction over her parents for purposes of summoning them to court. The court's jurisdiction over K.G.C.'s parents does not depend on K.G.C.'s marital status, but only her adjudicated status as within the court's reach. Indeed, once the juvenile court has jurisdiction over a minor, the court has broad authority to summon to court a minor's parents, custodian, guardian, or "any other person whose presence the court finds necessary" to serve the interests of the minor. Utah Code Ann. § 78–3a–110(5) (Supp.1999). This extensive reach reflects the nature of the equitable mission of the juvenile court, permitting the court to use many resources to provide guidance for a juvenile.

## III. Financial Responsibility of Parents After Emancipation

¶ 19 Although the court could properly summon K.G.C.'s parents to appear before it, the court arguably exceeded its authority in the order by imposing a potential legal liability on her parents. In the court's findings and conclusions of the August 25 order, the court noted: "The Court has reviewed the

law and finds that the Juvenile's parents are still responsible in matters regarding their child, [K.G.C.]." [3] Though the court perhaps meant only that the parents retained a moral responsibility for their daughter, the language of the order was ambiguous enough to raise serious concern on the part of K.G.C.'s parents that they could be held financially responsible to the court.

¶ 20 Prior to the final charges against K.G.C., the legal relationship between K.G.C. and her parents changed through her attainment of majority and her emancipation. "The period of minority extends in males and females to the age of eighteen years; but *all minors obtain their majority by marriage.*" Utah Code Ann. § 15–2–1 (1996) (emphasis added). Minority in this context is a legal status that limits the legal capacity of those within the status, minors. The limitations are intended to protect minors from themselves, based on the premise that minors are youthful, improvident, and subject to the influence of others. *See* 42 Am.Jur.2d *Infants* §§ 1–3 (1969). The "distinguishing legal characteristic [of minors] is the inability to make decisions on their own behalves." Carol Sanger & Eleanor Willemsen, *Minor Changes: Emancipating Children in Modern Times,* 25 U. Mich. J.L. Reform 239, 244 (1992). Attaining majority means that the legal disabilities attached to minority status are removed. *See* 42 Am.Jur.2d *Infants* § 1 (1969).

¶ 21 Emancipation is a concept closely related to, though slightly narrower than, majority. Emancipation is the release of a child from parental control, and the corresponding release of the parent from support obligations. *See In re R.R.,* 797 P.2d 459, 462 (Utah Ct.App.1990). Emancipation is the "termination of certain rights and obligations of the parent-child relationship." *Id.* When a child is emancipated, "these reciprocal rights and responsibilities are extin-

---

2. The statute places the burden of appearance on the parents or guardian of the minor. "The summons shall require the person or persons who have physical custody of the minor to appear personally and bring the minor before the court." Utah Code Ann. § 78–3a–110(4) (Supp. 1999).

3. Further, in its oral instructions during the court proceedings, the court stated: "The order should specifically indicate ... that the Court is denying the parents' petition to dismiss them from the proceedings. The Court has reviewed the law and has found that they still are liable and responsible under Utah state law in certain respects with regard to a child under eighteen."

guished and are no longer legally enforceable." *Id.* (citation omitted).

 ¶ 22 Typically, the marriage of a minor emancipates the minor by operation of law, without a court order. *See* 59 Am. Jur.2d *Parent and Child* § 83 (1987). Marriage creates "a new relation inconsistent with subjection to the control and care of the parent," and thus emancipates the child. *Id.; see also Niesen v. Niesen,* 38 Wis.2d 599, 157 N.W.2d 660, 662 (1968) ("[T]he fact that a child has entered into a [marriage] relation which is inconsistent with the idea of being in legal subjection to his [parent] or in a sense in bondage is sufficient to effect an emancipation."). "The salient feature of [marriage] is the child creates a new relationship between itself and its parent, relieving the parent from the responsibilities of support.... Once married, a dependent spouse no longer looks to its parent for support but relies instead upon the other spouse...." *Green v. Green,* 447 N.E.2d 605, 609 (Ind.Ct.App. 1983). Thus, though the biological, and perhaps emotional, tie between parent and child persists, the marriage of a minor severs the legal responsibilities and duties between parent and child.

 ¶ 23 Here, K.G.C. was not only emancipated under traditional common law concepts by marriage, but attained full majority status under Utah statutory law. Therefore, not only were the parent-child reciprocal duties severed, but all legal disabilities of minority were extinguished, and all responsibilities of adulthood were conferred. K.G.C., as an adult, has no guardian to either protect or control her. She is fully accountable for herself. Her parents have no legal responsibilities for her actions and are subject to no financial obligations which may be imposed on her by the court.

 ¶ 24 Because this legal relationship was changed through K.G.C.'s marriage, the juvenile court erred in its order if the court intended to impose potential future liability on K.G.C.'s parents for obligations properly attributable to K.G.C. The court cannot recreate a parent-child responsibility or duty when a person has attained majority and is emancipated because the legal status conferred upon majority is inconsistent with such control. *See B.A. v. State Dep't of*

*Human Resources,* 640 So.2d 961, 962 (Ala. Civ.App.1994) (holding parents owed no duty to pay college expenses to child emancipated under statutory provisions, stating that "a minor child who has had all [legal] disabilities removed ... so that he can manage his own affairs as an adult is no longer due support from his parents"); *Towery v. Towery,* 285 Ark. 113, 685 S.W.2d 155, 158 (1985) (holding courts cannot reimpose duty of child support on parent when an emancipated, adult child became disabled).

## CONCLUSION

¶ 25 In sum, the juvenile court did not err in failing to dismiss K.G.C.'s parents from their obligation to appear in juvenile court. Juvenile courts have broad jurisdiction and can summon to court parents, guardians, custodians, and others whom the court deems necessary to the proceedings to achieve the goals of the juvenile justice system. However, the court cannot recreate a legal responsibility between a parent and a child who has attained majority. Thus, the court's order should not be read as imposing on K.G.C.'s parents any potential legal or financial responsibility for her actions.

¶ 26 WE CONCUR: MICHAEL J. WILKINS, Presiding Judge, and NORMAN H. JACKSON, Judge.