No. 14547

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

IN THE MATTER OF DECLARING
T.Y.K. and D.A.W.R., Youths
in Need of Care.

---

Appeal from: District Court of the Eleventh Judicial District,
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Robert B. Allison, Kalispell, Montana

For Respondent:

Randy K. Schwickert, Kalispell, Montana
Patrick D. Sherlock, Kalispell, Montana

---

Submitted on briefs: April 5, 1979

Decided: AUG - 9 1979

Filed: AUG - 9 1979

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal by the parents of three minor children from a judgment of the District Court, Flathead County, the Honorable Robert C. Sykes presiding. Permanent custody of two of the minor children, T. K. and D. R., with right to consent to adoption was awarded to the Department of Social and Rehabilitation Services (SRS) of the State of Montana.

On March 31, 1977, D. R. suffered an oblique fracture of the right mid-femoral shaft, the large bone connecting the hip to the knee. At the time of this injury, D. R. was five and one-half weeks old. The mother immediately took the child to the hospital and the leg was placed in a cast. On October 7, 1977, D. R. suffered a spiral fracture of the humerus, the large bone between the shoulder and the elbow. He was again taken to the hospital for treatment. Both injuries occurred in the parents' home with no one present other than D. R., T.K. and the parents.

On Friday, October 7, 1977, representatives of the Flathead County sheriff's department and welfare department removed both children from the parents and placed them in foster care pending an investigation.

On Tuesday, October 11, 1977, the Flathead County attorney filed a petition for temporary investigative authority and protective services, and an order was issued on October 13, 1977, granting the same.

Early in the investigation the parents requested a polygraph examination. On October 28, 1977, the parents and their attorney stipulated and agreed with the deputy county attorney to submit to polygraph examinations and psychological stress

-2-

evaluation tests. There was a further stipulation that the results of said tests could be entered into evidence by either party in this matter. All tests were conducted in accordance with the stipulation.

On March 31, 1978, permanent custody was requested. A hearing was held on June 1 and 2, 1978, by the court sitting without a jury. Notice of the hearing by publication was given to T. K.'s natural father, E. V., on April 17, 24, and May 1, 1978. He failed to appear at the hearing and was defaulted.

The court issued its findings of fact and conclusions of law on June 21, 1978, stating in part: (a) that E. V. is unfit to have the care, custody or control of T. K. and that his rights as a parent should be terminated; (b) that the explanation of the parents of how the fractures were sustained by D. R. are contrary to and against any credible version of the cause of said fractures; (c) that the battered child syndrome doctrine of evidence applies and by reason thereof, by reasonable medical certainty, the fractures were sustained by traumatic blows caused by the father; (d) that the percentile in weight of both children at the time of foster care placement and the improvement of both children after foster home placement establishes emotional and physical damage to both children while in the custody of the parents; (e) that the children are of adoptable age and have sustained physical and emotional damage; (f) that the parents have abused and neglected D. R. and T. K., and are not fit and proper to have the care and custody of these children, and that their parental rights should be permanently terminated; (g) that as a result of the abuse

and neglect, these children are youths in need of care and the custody of these children should be permanently awarded to the Welfare Department with the right to consent to their adoption.

On June 26, 1978, the court issued its judgment and an order permanently awarding the care, custody and control of the minor children to the Department of Social/Rehabilitation and Services of the State of Montana with authority to consent to their adoption.

On July 6, 1978, the parents filed their motion to amend the findings and conclusions or a motion for a new trial on a number of grounds. All motions were denied by the court. The parents appeal from the judgment of the trial court.

The following issues are before the Court:

(1) Was the filing of the petition for temporary investigative authority and protective services prejudicial to the parents' rights?

(2) Did the District Court err in awarding permanent custody of the children to the Montana Department of Social and Rehabilitation Services? In so ordering, did the court comply with policies set forth in section 41-3-101 et seq., MCA?

(3) Was the admission of the results of a polygraph examination taken by stipulation of the parties proper?

The October 11, 1977, filing of the petition for temporary investigative authority and protective services was timely and proper. Section 41-3-301(2), MCA, provides: "a petition shall be filed within 48 hours of emergency placement of a child. . ." Here, the petition was filed on a Tuesday although the children were removed on the preceding Friday.

-4-

Rule 6(a), M.R.Civ.P., states: "When the period of time prescribed or allowed is less than 7 days, intermediate Saturdays, Sundays and holidays shall be excluded in the computation." Using this formula, the Department filed the petition within the 48-hour limitation. Therefore, the parents' objection is without merit.

We next consider the District Court order of June 26, 1978, declaring both children to be abused and neglected and awarding permanent custody of the children to SRS. We have discussed at length in many recent decisions the presumptions that the District Court is presumed to have acted correctly in these matters and we will not disturb the judgment unless there is found to be a mistake of law or findings of fact not supported by credible evidence. When determining whether or not a youth is abused or neglected the District Court is guided by section 41-3-102(2)(a), MCA, which provides:

"(2) 'Abuse' or 'neglect' means:

"(a) the commission or omission of any act or acts which materially affect the normal physical or emotional development of a youth. Any excessive physical injury, sexual assault, or failure to thrive, taking into account the age and medical history of the youth, shall be presumed to be nonaccidental and to materially affect the normal development of the youth."

The above guidelines allow the court to look at the "totality of the circumstances" surrounding a child's home environment before making a determination. In Re Gore (1977), ____ Mont. _____, 570 P.2d 1110, 1114, 34 St.Rep. 1179.

At the custody hearing medical testimony was presented which showed that D. R. had suffered two broken bones which were caused by substantial violent force or traumatic blows.

Testimony of the doctors, social workers and polygraph experts was received, all of which linked the cause of D. R.'s injuries to the father. Other testimony showed physical and verbal abuse of T. K. by her stepfather. Psychological evaluations of the parents revealed that the father manifested long term paranoic trends as well as strong underlying hostile agressive trends which may cause him to do physical injury and harm to others, and that the mother suffers from long term emotional instability caused by a moderately high level of anxiety. Also received were conflicting statements by both parents. Testimony by a nutritionist revealed that after the placing of D. R. in a foster home, his weight and height increased. There was also testimony of satisfactory performance by the father at his job at the Handicapped Thrift Store, a position which required some measure of patience.

Appellants' contention that there was insufficient evidence of abuse is of little merit when viewed with the family environment as a whole. Under section 41-3-102(2), MCA, abuse or neglect can take many forms--some violent, others more passive but just as injurious. This Court cannot hold the children hostage while awaiting the good behavior of the parents. It must protect the children's rights as well as the parents. In Re Gore, supra, 570 P.2d at 1114.

In situations such as this, where the abuse of one child is less than the abuse of another, various jurisdictions have upheld the authority of a court to remove both children. The more enlightened majority rule appears to be that a parent does not have the privilege of inflicting brutal

treatment upon each of his children in succession before they may individually obtain the protection of the state. In Re Miller (1952), 40 Wash.2d 319, 242 P.2d 1016. See also, In Re K.D.E. (1973), 87 S.D. 511, 210 NW.2d 907; People in the Interest of C. R., et al. (Colo. 1976), 557 P.2d 1225; and In the Interest of Brooks (1978), 63 Ill.App.3d 328, 379 NE.2d 872.

Section 41-3-101 et seq., MCA, grants to the District Court the ability to make a determination of neglect and abuse as to all children in a family based on the policy that abuse of one child has a detrimental effect on the other children's development.

The declared policy of Montana is found in section 41-3-101, MCA:

> "(a) insure that all youth are afforded an adequate physical and emotional environment to promote normal development;
>
> ". . .
>
> "(2) It is the policy of this state to provide for the protection of children whose health and welfare are adversely affected and further threatened by the conduct of those responsible for their care and protection. . . to seek to prevent further abuses, protect and enhance the welfare of these children, and preserve family life wherever possible."

The parents' objection to the admission of the results of the polygraph examination is without merit under the circumstances here. The parents failed to object to the admission of the polygraph results in the District Court. An issue cannot be raised for the first time on appeal. Velte v. Allstate Ins. Co. (1979), ___Mont.___, 593 P.2d 454, 36 St.Rep. 724. Therefore, we decline to comment on this issue.

The record contains sufficient substantial, credible evidence to support the findings and judgment of the trial court and, therefore, the judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

-8-