**STATE of Utah, In the Interest of E.K., a person under eighteen years of age.**

**K.K., Appellant,**

v.

**STATE of Utah, Appellee.**

**No. 950292–CA.**

Court of Appeals of Utah.

March 14, 1996.

Wesley Baden, Salt Lake City, for Appellant.

Jan Graham, Annina M. Mitchell, and Linda Luinstra, Salt Lake City, for Appellee.

Kristin G. Brewer, Salt Lake City, Guardian Ad Litem.

Before ORME, DAVIS and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

Appellant, K.K., appeals from an order of the juvenile court concluding her son, E.K., is a neglected child under Utah Code Ann. § 78–3a–2(16)(a)(iv) (Supp.1995). We affirm.

## FACTS

Appellant is the mother of three children: twins, R.K., Jr. and C.K.; and the infant, E.K. On October 3, 1992, the seven-month-old twins were hospitalized with skull fractures and broken bones. The Division of Family Services (DFS) took the twins into protective custody and filed a neglect petition with the juvenile court. On January 14, 1993, appellant admitted in juvenile court that the children's injuries were the result of her hitting and throwing the infants. She also testified that R.K., Sr., the children's father, resides in the home, but due to his work schedule, he is incapable of protecting the children. DFS was granted temporary custody of the twins and they were placed in foster care. Both parents were ordered to undergo psychological evaluations and treatment.

Appellant was also criminally prosecuted in district court for her actions. On January 25, 1993, she pleaded guilty to attempted child abuse, a third-degree felony, and was sentenced to not more than five years in prison. The sentence was stayed and appellant was placed on probation on the condition she seek treatment and have no unsupervised contact with any children without further order of the court.

Ten months later, appellant gave birth to E.K. DFS took custody of E.K. when he was two days old and filed a neglect petition with the juvenile court based on appellant's conviction for attempted child abuse of the twins, the district court's probation order prohibiting appellant's unsupervised contact with children, and R.K., Sr.'s inability to protect the children.

At the hearing on the neglect petition, the State proceeded under section 78–3a–2(16)(a)(iv) of the Utah Code, claiming E.K. was a neglected child within the jurisdiction of the court because he was "at risk of being neglected or abused because other children in the same home were neglected or abused." The State requested the court take judicial notice of the adjudicative facts of the previous juvenile and district court proceedings involving Appellant's abuse of the twins and her conviction and sentence. With no objection from appellant, the court took judicial notice of the adjudicative facts underlying these cases and the State rested its case-in-

chief. Appellant then made a motion to dismiss the State's neglect petition.

The trial court denied appellant's motion to dismiss. The court concluded the State had established a prima facie case under section 78–3a–2(16)(a)(iv), but allowed the parents to produce evidence that E.K. was not at risk of being neglected or abused.

Neither parent disputed appellant's abuse of the twins nor R.K., Sr.'s absence when the abuse occurred. R.K., Sr. testified that appellant had not presented a physical risk to any of the children during their DFS supervised visitations. Appellant then testified that during the two days of supervised contact she had with E.K. in the hospital, she had not abused him or put him at risk. Other testimony came from two DFS "trackers" who had monitored the family's DFS supervised visits. Both trackers testified that they had not witnessed any inappropriate behavior by appellant or R.K., Sr. toward the children during these visits.

After considering the evidence from the State and the natural parents, the trial court concluded the State had proved by clear and convincing evidence that E.K. is a "neglected child" within the purview of section 78–3a–2(16)(a)(iv) in that E.K. was at risk of being neglected or abused because other children in the same home were neglected or abused.[1]

Appellant now appeals.

## I. CAN AN AFTER–BORN CHILD QUALIFY AS A "NEGLECTED CHILD" UNDER SECTION 78–3a–2(16)(a)(iv) OF THE UTAH CODE?

█ Appellant argues that E.K. cannot, as a matter of law, be a "neglected child" under section 78–3a–2(16)(a)(iv) of the Utah Code because he was not born or conceived at the time appellant abused his twin siblings or was criminally sentenced for that abuse, and thus is not in the "same home" as his siblings.

Section 78–3a–16(2) confers on the juvenile court "exclusive original jurisdiction in pro-

ceedings: ... (c) concerning any child: ... (i) who is abused [or] neglected." Utah Code Ann. § 78–3a–16(2) (Supp.1995). Section 78–3a–2(16)(a)(iv) defines a "neglected child" as a child "who is at risk of being a neglected or abused child ... because another child in the same home was neglected or abused." Id. § 78–3a–2(16)(a)(iv).

We must determine what the legislature intended by the phrase "in the same home." The State urges us to read the phrase broadly, keeping the entire structure of the Utah child protection system in mind. Appellant contends we should limit the language to only children actually present in the home when the abuse to the sibling occurs or conceived when the abuse or adjudication of abuse occurs.

Both arguments could be supported under the broad language of the statute. However, we conclude appellant's narrow reading of section 78–3a–2(16)(a)(iv) is contrary to its legislative intent and defeats the purpose of the act. The legislative history of this section indicates the language was added "to protect the siblings of seriously abused children." Child Neglect Amendment, 1989: Hearings on H.B. 165, 48th Legislature, General Session (January 31, 1989) (statement of Rep. Protzman). This section was also intended to provide an avenue "to allow investigation, monitoring, and supervision of the [siblings of abused] children," and to "add to the definition of neglected child the child who, because another child in the same home is neglected or abused, now fits under the definition. This allows the safeguard of current child protection ordinances to kick into place." Id. Nowhere does the legislative history support appellant's argument. Rather, it supports a broad protective purpose.

Appellant urges us to find a distinction between children born ten months, as opposed to nine months, after the abuse of a sibling is adjudicated. There is no rational distinction for excluding such an after-born child from protection. A distinction excluding after-born children would leave a large

---

1. After a dispositional hearing in March 1995, the court ordered E.K. placed in R.K., Sr.'s physical custody under DFS's supervision and monitoring, conditioned upon his continuation of

treatment and parenting classes. However, the court continued DFS's legal custody and guardianship of E.K. This March 1995 order is not challenged by appellant on appeal.

group of at-risk children outside the provision's protective reach based only on an arbitrary time limit.

Furthermore, a determination of neglect under section 78–3a–2(16)(a)(iv) merely allows a juvenile court to take jurisdiction over a child. The court then has the authority to hold a trial and enter a number of possible dispositions appropriate for the given case.[2] Thus, the adjudication of neglect under section 78–3a–2(16)(a)(iv) is only a first step in the process of child protection as set up by Utah law and should be read broadly.

Moreover, parents can present evidence to refute the application of section 78–3a–2(16)(a)(iv) to an after-born child. The parents, as in the instant case, are allowed an opportunity to demonstrate that the home environment has changed and that an after-born child is not "at risk."

Numerous cases from other states support the general proposition that courts may adjudicate a child as abused or neglected due to prior abuse or neglect of a sibling.[3] Appellant attempts to distinguish these cases, asserting that in each of them the child was alive at the time of the abuse.

However, in *D.G.N. v. S.M.*, 691 S.W.2d 909, 912–13 (Mo.1985) (en banc), the Missouri Supreme Court allowed an after-born child to qualify as a neglected child.[4] The court held that a mother's prior physical abuse of two children provided prima facie evidence for terminating her parental rights in a child, who was born a year after the abuse of the other two children occurred.[5]

Based upon the foregoing, we conclude section 78–3a–2(16)(a)(iv) can apply to a child conceived and born after another child in the home has been abused or neglected.[6] Therefore, the juvenile court correctly proceeded under that section.

## II. DID THE TRIAL COURT ERR IN APPLYING SECTION 78–3a–2(16)(a)(iv)?

Appellant further argues the trial court erred in ruling the State established a prima facie case under section 78–3a–2(16)(a)(iv). We disagree.

Section 78–3a–2(16)(a)(iv) requires the State to show by clear and convincing evidence that the child was "*at risk of being a neglected or abused child* ... because another child *in the same home* is a neglected or abused child." Utah Code Ann. § 78–3a–2(16)(a)(iv) (Supp.1995) (emphasis added). Otherwise, the State's case would have been subject to dismissal after its case-in-chief.

Appellant asserts the State was required to affirmatively prove that the "same home"

**2.** The possible dispositions could include an order for counseling, protective supervision, provision of reunification services to the family, an award of custody to a relative or DFS, or a permanent termination of parental rights.

**3.** *See, e.g., In re P.N.*, 533 P.2d 13, 16 (Alaska 1975); *In re Jason L.*, 222 Cal.App.3d 1206, 272 Cal.Rptr. 316, 321 (1990); *In re C.R.*, 38 Colo. App. 252, 557 P.2d 1225, 1227 (1976); *In re D.J.S.*, 563 So.2d 655, 663 (Fla.Ct.App.1990); *In re Brooks*, 63 Ill.App.3d 328, 20 Ill.Dec. 39, 48, 379 N.E.2d 872, 881 (1978); *In re A.B.*, 12 Kan. App.2d 391, 746 P.2d 96, 97 (1987); *K.S. v. M.N.W.*, 713 S.W.2d 858, 863 (Mo.Ct.App.1986); *In re T.Y.K.*, 183 Mont. 91, 598 P.2d 593, 595 (1979); *In re Miglioretto*, 88 Or.App. 126, 744 P.2d 298, 299 (1987); *In re Miller*, 40 Wash.2d 319, 242 P.2d 1016, 1018 (1952).

**4.** Appellant attempts to distinguish *D.G.N.* by arguing the child was conceived before the adjudication of abuse occurred. Again, we see no logical distinction between a child conceived before the adjudication occurs and a child conceived immediately afterward.

**5.** Although *State ex rel. J.J.T.*, 877 P.2d 161 (Utah App.1994) discussed the applicability of res judicata to proceedings for the termination of parental rights and therefore is not directly on point, this court allowed termination proceedings to continue for a child unborn at the time his sibling was adjudicated neglected. *Id.* at 162 n. 1.

**6.** Importantly, our determination of this issue should make application of section 78–3a–2(16)(a)(iv) consistent with the provisions of the new Child Welfare Reform Act. The Child Welfare Reform Act allows a court to terminate parental rights for "injury ... or death of a *sibling of the child* due to *known or substantiated* abuse or neglect by the parent." Utah Code Ann. § 78–3a–408(2)(g) (Supp.1995). This provision's scope does not exclude after-born children when determining termination of parental rights. It would be inimical to allow the juvenile court to terminate parental rights on the basis of the abuse of a sibling, but not allow it to assert jurisdiction over the child for identical reasons.

environment still existed, or stated another way, that E.K. was "at risk" of being abused. Appellant also contends that the adjudicative facts from the prior proceedings, which were judicially noticed by the court, are not enough to establish a prima facie case. We agree that the State was required to prove E.K. was "at risk" as defined by the statute, however, we conclude the facts before the court were sufficient to meet the statutory requirement.

■ To establish its prima facie case, the State presented court documents containing adjudicative facts from the prior juvenile court and criminal proceedings of appellant's abuse of the twins. Appellant did not object to the court taking judicial notice of these adjudicative facts. As a general rule, "[j]udicial notice [of adjudicative facts] serves as a substitute for the taking of evidence." *Ringwood v. Foreign Auto Works,* 786 P.2d 1350, 1357 (Utah App.1990), *cert. denied,* 795 P.2d 1138 (Utah 1994); *accord* Utah R.Evid. 201(g) (providing in civil actions, judicially noticed facts are conclusively established for purposes of factfinding process). Therefore, judically noticed adjudicative facts are equivalent to facts testified to in court.

In this case, the adjudicative facts before the juvenile court included appellant's admission that she caused the twins' skull fractures and broken bones by hitting and throwing the infants out of frustration and a lack of parenting skills. In addition, the facts showed that R.K., Sr. was unable to protect the children because the abuse occurred while he was at work. Furthermore, the evidence established that as a condition of probation appellant could not be left alone with any children. Finally, the serious abuse of E.K.'s siblings occurred only ten months before E.K.'s birth.

We agree with the juvenile court that the brief interval between the serious abuse of the twins—infants themselves—and E.K.'s birth, coupled with appellant's probation condition forbidding her from unsupervised contact with any children, adequately established a prima facie case that E.K. was "at risk." Therefore, we conclude the trial court correctly ruled the State introduced sufficient evidence to establish the elements of a

prima facie case under section 78–3a–2(16)(a)(iv). Then, the court properly shifted the burden of production of evidence to the parents to allow them to persuade the court that the State had not established by clear and convincing evidence that E.K. was a neglected child because he was at risk of being abused.

### III. DID THE STATE PRESENT CLEAR AND CONVINCING EVIDENCE THAT E.K. WAS A NEGLECTED CHILD UNDER SECTION 78–3a–2(16)(a)(iv)?

Finally, appellant claims the State did not establish by clear and convincing evidence that E.K. is at risk of being neglected or abused under section 78–3a–2(16)(a)(iv) of the Utah Code.

When reviewing an appeal of a custody determination, Utah courts have followed *State ex rel. K.B.,* 7 Utah 2d 398, 326 P.2d 395, 397 (1958), in which the supreme court stated:

[A]ppeals from the juvenile court shall be "in the same manner ... as ... appeals from judgments ... of the district court...." Hearings in the juvenile court involving questions as to the custody of children are equitable.... [A]nd it is the established rule that we will not disturb the findings and determination made unless they are clearly against the weight of the evidence, or the court has abused its discretion.

*See also State ex rel. K.K.H.,* 610 P.2d 849, 851–52 (Utah 1980) (citations omitted). "Moreover, we defer to the juvenile court because of its 'advantaged position with respect to the parties and the witnesses.'" *State ex rel. P.H. v. Harrison,* 783 P.2d 565, 570 (Utah App.1989) (quoting *Robertson v. Hutchison,* 560 P.2d 1110, 1112 (Utah 1977)).

In *State ex rel. D.M.,* 790 P.2d 562, 566–67 (Utah App.1990), the appellant attacked the juvenile court's final order of custody, claiming the evidence did not support the juvenile court's finding that the child was a dependent child. This court determined "[t]he challenge to a factual finding must be conducted in two steps: (1) appellant must first

marshal all the evidence that supports the finding, and (2) then demonstrate to us that, despite this evidence, the finding is so lacking in support as to be 'against the clear weight of the evidence' and, thus, clearly erroneous." *Id.* at 567 (quoting *Doelle v. Bradley,* 784 P.2d 1176, 1178 (Utah 1989)).

In this case, appellant challenges the State's use of judicial notice to establish clear and convincing evidence. However, appellant made no timely objections to the use of this evidence before the trial court. Furthermore, appellant has failed to marshal the evidence supporting the trial court's determination that E.K. is a neglected child under section 78–3a–2(16)(a)(iv). Accordingly, we decline to consider appellant's challenge.

## CONCLUSION

We conclude an after-born child can qualify as a neglected child under section 78–3a–2(16)(a)(iv) of the Utah Code, and thus the juvenile court can exercise jurisdiction over such children. We also conclude the trial court employed the proper procedures for determining neglect under that section. Finally, as a result of appellant's failure to marshal the evidence supporting the trial court's finding of neglect, we do not reach the issue of whether the court properly found by clear and convincing evidence that E.K. was a neglected child. We therefore affirm.

DAVIS, Associate P.J., concurs.

ORME, P.J., concurs, except as to section III, he concurs only in the result.