No. 98-376

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 337N

IN RE K.B. and M.B.,

Youths in Need of Care.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Wendy S. Bentley, Pro Se, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Mark W. Mattioli,

Assistant Attorney General; Helena, Montana

Michael W. Sehestedt, Missoula County Attorney; Leslie Halligan,

Deputy County Attorney; Missoula, Montana

Submitted on Briefs: December 17, 1998

Decided: December 30, 1998

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be**

reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2. The predecessor of the Department of Public Health and Human Services filed a petition in District Court for the Fourth Judicial District in Missoula County seeking permanent legal custody with the right to consent to adoption for K.B. and M.B., the natural children of Wendy S. Bentley and Michael Flanigan. The District Court awarded custody to DPHHS and Wendy appeals. We affirm the order and judgment of the District Court.

¶3. There are five issues on appeal:

¶4. 1. Does this Court have jurisdiction to consider Wendy's appeal?

¶5. 2. Did the District Court err when it allowed DPHHS to petition for temporary investigative authority and protective services more than forty-eight hours after the children were removed from the home?

¶6. 3. Did DPHHS fail to comply with the time requirements of § 41-3-403(1)(c), MCA?

¶7. 4. Did DPHHS fail to comply with the time requirements of § 41-3-404(4)(b), MCA?

¶8. 5. Was Wendy denied due process of law?

## FACTUAL BACKGROUND

¶9. K.B. and M.B. resided with their natural mother and father, Wendy Bentley and Michael Flanigan, in Missoula on January 8, 1996. That evening, Wendy and Michael were involved in a domestic dispute during which Michael was stabbed with a knife. When law enforcement officers arrived, they noticed evidence of what they believed to be physical abuse of the children, and Wendy told them that Michael had hit the children. The officers contacted DPHHS. By January 11, 1996, DPHHS concluded that it was necessary to remove the children from the home and filed a petition for temporary investigative authority.

¶10. In March 1997, more than a year after K.B. and M.B. were first removed from the home of their natural parents, the District Court entered findings of fact, conclusions of law, and an order which terminated Wendy's and Michael's parental rights. The order was made interlocutory with respect to Wendy, for a period of three months, during which she had the opportunity to seek counseling and otherwise comply with a second treatment plan designed to resolve the conditions and conduct which caused the termination of her parental rights. Wendy did not complete the plan to the satisfaction of the District Court and the final order terminating her rights was served upon her attorney of record on February 4, 1998. Wendy was served personally on May 19, 1998, and on May 29, 1998, she filed notice of this pro se appeal with the District Court. Michael has not appealed the entry of final judgment against him. Further relevant facts will be provided as necessary below.

## ISSUE 1

¶11. Does this Court have jurisdiction to consider Wendy's appeal?

¶12. As a preliminary matter, we will address DPHHS's contention that we are without jurisdiction to address this appeal because it was not filed within sixty days of entry of final judgment in the district court, pursuant to Rule 5(a)(1), M.R.App.P.

¶13. Rule 5(a)(1) provides that "if the state of Montana, or any . . . agency thereof is a party the notice of appeal shall be filed within . . . 60 days from the service of notice of the entry of judgment."

¶14. DPHHS contends that service of the notice of entry of judgment upon Wendy's attorney of record, the Missoula Public Defender's Office, on February 2, 1998, marked the beginning of the sixty-day period within which Wendy could file her appeal.

¶15. The return of service from the Lewis and Clark County Sheriff's Office shows that Wendy was personally served with the judgment on May 19, 1998. Wendy's notice of appeal was apparently signed on May 18, 1998, and filed on May 29, 1998. Her notice states that she was served on April 23, 1998.

¶16. From the record, it is evident that there has been continuous disagreement over

precisely who, if anyone, represented Wendy. Because the Missoula Public Defender's Office had not been in contact with Wendy since March 1997, and because Wendy proceeded pro se at various times during the pendency of this action, we hold that notice of entry of judgment was not effectively received by Wendy until served on her personally. Therefore, pursuant to Rule 5(a)(2), M.R.App.P., Wendy's appeal was filed within sixty days and we will address the merits of her appeal.

## ISSUE 2

¶17. **Did the District Court err when it allowed DPHHS to petition for temporary investigative authority and protective services more than forty-eight hours after the children were removed from the home?**

¶18. **When a district court engages in discretionary action which cannot be accurately characterized as a finding of fact or conclusion of law, we review the decision to determine whether the district court abused its discretion.** *See In re F.H.* **(1994), 266 Mont. 36, 39, 878 P.2d 890, 892.**

¶19. **DPHHS removed the children from Wendy's home on January 11, 1996. The petition for temporary investigative authority was filed on January 16, 1996. Wendy contends that the petition was not filed within forty-eight hours from the removal of the children from her custody.**

¶20. **Section 41-4-301(3), MCA, provides:**

A petition [for temporary investigative authority and protective services] must be filed within 48 hours of emergency placement of a child unless arrangements acceptable to the agency for the care of the child have been made by the parents.

¶21. **The children were removed from the home by DPHHS on a Thursday. The petition was filed the following Tuesday. The intervening Monday was a holiday, the birthday of Martin Luther King Jr., in observance of which the District Court was closed.**

¶22. **Pursuant to Rule 6(a), M.R.Civ.P., when the period of time prescribed or allowed by statute for the filing of a paper in a court is less than eleven days,**

intermediate Saturdays, Sundays, and holidays, are excluded from the computation. We have previously applied Rule 6(a) to a petition for temporary investigative authority. *See In re T.Y.K.* (1979), 183 Mont. 91, 94, 598 P.2d 593, 595. Therefore, DPHHS filed the petition within the 48-hour time limitation, and we affirm the District Court's conclusion to that effect.

## ISSUE 3

¶23. Did DPHHS fail to comply with the time requirements of § 41-3-403(1)(c), MCA?

¶24. Wendy next contends that the show cause hearing required by § 41-3-403(1)(c), MCA, was not conducted within twenty days from the issuance of the order for protective services, which occurred on January 16, 1996. The show cause hearing was set for and conducted on Monday, February 6, 1996, twenty-one days after the order was issued.

¶25. Pursuant to additional language in Rule 6(a), M.R.Civ.P., when the last day of a time period is a Saturday, Sunday, or a holiday, the period runs until the end of the next day on which the court is not closed. Therefore, the District Court conducted the show cause hearing within the prescribed time period, and Wendy's contention has no merit.

¶26. The terms of the order for protective services and order to show cause offered Wendy and Michael the option of either complying with the terms of the order or showing cause why they have not complied with the order. At the show cause hearing, Wendy and Michael stated that they would comply with the terms of the order.

¶27. They requested a second show cause hearing on the basis that they did not understand what they had agreed to at the original hearing. The District Court granted their request, even though it was not obligated to do so. At the second hearing, Wendy and Michael fired their attorney, told the court that they did not recognize its authority, and left the hearing. The hearing went forward and DPHHS presented its case. On April 11, 1996, the District Court issued findings and an order declaring K.B. and M.B. "youths in need of care."

¶28. We hold that the original show cause hearing satisfied the time requirements of

§ 41-3-403(1)(c), MCA. The District Court's decision to allow Wendy a second opportunity to show cause was not required and, therefore, not involved, because it occurred more than twenty days after the issuance of its order for protective services. Accordingly, we conclude there was not a violation of § 41-3-403(1)(c), MCA.

## ISSUE 4

¶29. Did DPHHS fail to comply with the time requirements of § 41-3-404(4)(b), MCA?

¶30. Pursuant to § 41-3-404(4)(b), MCA, the District Court is required to conduct a dispositional hearing within thirty days of its determination that a child is a youth in need of care. Wendy contends that this hearing did not occur within the prescribed time limits.

¶31. As a result of the April 10, 1996, hearing, the District Court issued two separate orders. In the first, "interim" order, dated April 11, 1996, K.B. and M.B. were found to be youths in need of care. The second order, issued April 19, 1996, awarded temporary custody of K.B. and M.B. to DPHHS. Both orders were based on findings that the District Court made as a result of the April 10, 1996, hearing. Therefore, we conclude that the determination that the children were youths in need of care and that they should be placed in DPHHS's custody for their protection occurred contemporaneously, and the thirty-day time limit was satisfied.

## ISSUE 5

¶32. Was Wendy denied due process of law?

¶33. Wendy contends that her due process rights were violated by failures of the District Court to comply with the time requirements of the child abuse and neglect statutes. Because we hold that the District Court and DPHHS properly complied with all time requirements, we hold that Wendy's due process rights were not violated in this respect.

¶34. Wendy also contends that her due process rights were violated because she was indigent and unable to retain private counsel. She argues that the public defender who was appointed to represent her was negligent in the performance of his duties.

¶35. At her first appearance in this matter, Wendy asked for and received court-appointed counsel, to which she was entitled. *See In re A.S.A.* (1993), 258 Mont. 194, 198, 852 P.2d 127, 129. At a later appearance, she informed the court that she wished to proceed pro se, because she was dissatisfied with her court-appointed counsel. We can find no evidence in the record that Wendy was not adequately represented by her court-appointed counsel during the period in which he was retained.

¶36. Finally, Wendy contends that the District Court discriminated against her on the basis of her race and religion. Wendy is a Native American and there is evidence in the record which suggests that she conducted Native American religious rituals in her home. One of the witnesses at the April 10, 1996, hearing characterized the rituals as "witchcraft." This is regrettable. However, there is no mention of Wendy's race or religion in the District Court's findings of fact or conclusions of law.

¶37. We conclude that the District Court did not rely on the characterizations of Wendy's race or religion as "witchcraft" when it made its determination, and we hold that Wendy's due process rights were not violated by discrimination on the part of the District Court.

¶38. Wendy raises several additional issues in her brief, none of which were supported by the record before us. We affirm the judgment of the District Court terminating Wendy's parental rights and awarding permanent legal custody to DPHHS.


/S/ TERRY N. TRIEWEILER




We Concur:


/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.