No. 99-016

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 173

295 Mont. 227

983 P.2d 387

IN RE THE MATTER OF J.A.B.,

A Minor Child.

STATE OF MONTANA DEPARTMENT OF

PUBLIC HEALTH AND HUMAN SERVICES,

CHILD PROTECTIVE SERVICES DIVISION,

FLATHEAD COUNTY OFFICE,

Petitioner and Respondent,

v.

ERIN HEINZEN,

Respondent and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

Honorable Ted O. Lympus, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Peter F. Carroll, Kalispell, Montana

For Respondents:

Honorable Joseph P. Mazurek, Attorney General; Mark W. Mattioli,

Assistant Attorney General, Helena, Montana

Thomas J. Esch, County Attorney; Randy Schwickert, Deputy County

Attorney, Kalispell, Montana

Robert Allison, Kalispell, Montana (Guardian Ad Litem)

Submitted on Briefs: June 17, 1999

Decided: July 20, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1. Erin Heinzen appeals the decision of the Eleventh Judicial District Court, Flathead County, terminating her parental rights to her son, J.A.B. We affirm in part and reverse in part.**

**¶2. Two issues resolve this appeal: whether the court erred in denying the motion to dismiss, and whether it erred in concluding that Heinzen failed to complete a court-approved treatment plan.**

**¶3. Heinzen, then 19 years old, gave birth to J.A.B. in November 1995, five months after the beating death of her two and one-half year old daughter, Daphne. Daphne died of injuries she sustained as a result of being beaten by Heinzen's fiancé and J.A.B.'s father, Brandon Baldauf. Shortly after J.A.B.'s birth, the Montana Department**

of Public Health and Human Services (DPHHS) petitioned for and obtained an order for temporary investigative authority to protect J.A.B. from abuse at the hands of Baldauf, with whom Heinzen intended to continue her relationship. Baldauf subsequently pled guilty to negligent homicide in Daphne's death.

¶4. One provision of the initial treatment plan signed by DPHHS and Heinzen was that Heinzen would allow no visitation between Baldauf and J.A.B. without permission from DPHHS. Heinzen also agreed to obtain regular medical examinations of J.A.B.; to provide J.A.B. with financial support and adequate nutrition; to maintain a place of residence for herself and J.A.B.; to attend parenting classes and participate in counseling to work on issues of low self esteem, relationships, and grief; to receive social work home visits; to obtain a psychological evaluation; and to follow all recommendations by the above resources.

¶5. In December 1996, following unsuccessful placements of Heinzen and J.A.B. with Heinzen's mother and in a foster home in Kalispell, Montana, Heinzen and DPHHS executed Heinzen's fourth treatment plan, under which Heinzen and J.A.B. would reside at the Florence Crittenton Home, a therapeutic foster home in Helena, Montana. That treatment plan required that Heinzen would have no contact with Baldauf, who was released from prison in April 1997. Heinzen also agreed to attend parenting classes and to undergo counseling while at the Florence Crittenton Home. Heinzen's fourth treatment plan was in effect from December 30, 1996, through March 31, 1997.

¶6. Heinzen continued to reside at the Florence Crittenton Home after her fourth treatment plan expired. During the late summer of 1997, she had surreptitious telephone conversations two to four times each week with Baldauf. Additionally, on two occasions in August and September of 1997, Heinzen took J.A.B. with her to rendezvous with Baldauf at out-of-town motels. When these surreptitious contacts were reported by another resident of the Florence Crittenton Home, DPHHS petitioned for the termination of Heinzen's parental rights.

¶7. At the termination hearing, the court heard extensive testimony from the social workers and therapists involved in Heinzen's treatment plans. Heinzen and Baldauf, who had relinquished his parental rights, also testified. The witnesses unanimously agreed that Heinzen and J.A.B. enjoyed a caring, nurturing, well-bonded mother-son relationship. However, there was also evidence that Heinzen would require a period

of years to overcome her tendency to enter into addictive relationships with men in which she would not keep her child safe from abuse from her partner. After the hearing, the court entered written findings, conclusions, and judgment terminating Heinzen's parental rights to J.A.B.

## Issue 1

¶8. Did the District Court err in denying the motion to dismiss?

¶9. Prior to trial but after disclosure of the evidence, Heinzen moved to dismiss the petition for termination of her parental rights as inadequate as a matter of law. She contended that there was not a sufficient basis to find J.A.B. a youth in need of care. The court did not rule on the motion until it entered its findings, conclusions, and judgment.

¶10. A youth in need of care is one who is abused or neglected. Section 41-3-102(22), MCA. Abused or neglected means the child has suffered child abuse or neglect: harm to the child's health or welfare or threatened harm to the child's health or welfare. Section 41-3-102 (2) and (6), MCA. Harm to a child's health or welfare means, inter alia, the harm that occurs when a parent exposes or allows the child to be exposed to an unreasonable risk to the child's health or welfare by failing to intervene or eliminate the risk. Section 41-3-102(9)(e), MCA. Threatened harm to a child's health or welfare means substantial risk of harm to the child's health or welfare. Section 41-3-102(19), MCA.

¶11. In denying the motion to dismiss, the court opined that Heinzen had been given fair notice of DPHHS's claims from the time DPHHS filed its first petition for temporary investigative authority. The record reflects that DPHHS was concerned for J.A.B.'s physical safety because of Heinzen's apparent lack of concern about leaving her infant son in the care of Baldauf, who had killed her daughter, Daphne. The court further stated that it was not true that the petition must fail because there had been no proof that Heinzen had physically abused J.A.B. Citing Daphne's death five months before J.A.B.'s birth, the court quoted this Court's statement from *Matter of T.Y.K.* (1979), 183 Mont. 91, 96, 598 P.2d 593, 595: "[A] parent does not have the privilege of inflicting brutal treatment upon each of his children in succession before they may individually obtain the protection of the state."

**¶12. We agree with the District Court's analysis as to the motion to dismiss. We hold that the District Court did not abuse its discretion when it denied Heinzen's pretrial motion to dismiss and request for attorney fees and costs attendant with that motion.**

Issue 2

**¶13. Did the court err in concluding that Heinzen failed to complete a court-approved treatment plan?**

**¶14. Parental rights may be terminated when a child is adjudicated a youth in need of care, "an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful," and the conduct or the condition of the unfit parent is unlikely to change within a reasonable time. Section 41-3-609(1)(e), MCA. A parent's right to care and custody of a child is a fundamental liberty interest.** *In re Custody and Parental Rights of P.M.*, **1998 MT 264, ¶12, 291 Mont. 297, ¶ 12, 967 P.2d 792, ¶ 12. Accordingly, before parental rights may be terminated, the district court must determine that each statutory requirement has been established, and the burden is on the party seeking termination to demonstrate by clear and convincing evidence that every requirement set forth in the statute has been satisfied.** *In re P.M.* **at ¶ 12.**

**¶15. In the present case, the District Court concluded:**

3. Pursuant to Section 41-3-609(4)(c), MCA, a treatment plan is not required in a case such as this where the death of Daphne Heinzen resulting from neglect by her mother, Respondent, has occurred. Nevertheless, treatment plans were prepared for Respondent and such plans were appropriate and approved by the Court.

4. Termination of the parent-child legal relationship between Respondent and [J.A.B.] should be ordered because Respondent has failed to comply with the treatment plans, the plans were thus not successful, and the conduct or condition of Respondent is unlikely to change within a reasonable time.

**¶16. While Heinzen characterizes these determinations as findings of fact, the**

District Court labeled them conclusions of law. In *Matter of D.H.* (1994), 264 Mont. 521, 524-25, 872 P.2d 803, 805, we clarified the standard of review for cases involving a youth in need of care and termination of parental rights. The standard of review applied to purely factual findings in such a proceeding is the clearly erroneous standard set forth in *Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. We review conclusions of law in a termination proceeding to determine if those conclusions are correct. *Matter of D.H.*, 264 Mont. at 525, 872 P.2d at 805.

¶17. The sole grounds for the court's conclusion that Heinzen failed to complete her treatment plans were the secret phone calls and meetings between Heinzen and Baldauf in July, August, and September of 1997. Heinzen points out that no court-approved treatment plan was in place at that time. She therefore asserts, and we agree, that those contacts could not constitute a failure on her part to complete a court-approved treatment plan.

¶18. Heinzen's fourth treatment plan, which prohibited her from communicating in any form with Baldauf, had expired on March 31, 1997. The evidence was that the subject unauthorized telephone calls between Heinzen and Baldauf began in July and August of 1997 and that the first of their secret visits was in August of that year. Those telephone calls and that visit occurred after Heinzen's fourth treatment plan had expired.

¶19. Heinzen agreed to a fifth treatment plan which was in effect from September 3, 1997, through March 30, 1998. Under the terms of that plan, she was allowed limited contact with Baldauf in the form of telephone and written correspondence, as long as that contact was monitored by staff of the Florence Crittenton Home or by a DPHHS social worker. Heinzen's second clandestine meeting with Baldauf occurred on September 19, 1997, when she was supposedly going home to Kalispell to celebrate her birthday. That visit clearly violated the terms of Heinzen's fifth treatment plan, as did the secret phone calls between Heinzen and Baldauf which occurred in September. The fifth treatment plan, however, was not approved by the District Court until October 3, 1997. Therefore, at the time of the ostensible violations, no court-approved treatment plan was in effect.

¶20. The State's brief refers to a "clinical treatment plan" executed by Heinzen and her case manager at the Florence Crittenton Home in March 1997. That plan did not

have an end date and was, thus, in effect during the time here at issue. That plan, however, was not court-approved.

¶21. Because no court-approved treatment plan was in effect at the time of Heinzen's unauthorized contacts with Baldauf, it cannot be said that there was clear and convincing evidence that Heinzen failed to comply with a court-approved treatment plan. We hold that the District Court erred in concluding that Heinzen failed to complete a court-approved treatment plan.

¶22. The District Court also reasoned, under conclusion 3 set forth above, that Heinzen's parental rights could be terminated under the alternative rationale of § 41-3-610(4)(c), MCA, which provides that no treatment plan is required if the court finds, following a hearing, that a child's death or serious bodily injury caused by abuse or neglect by the parent has occurred. However, the court made no finding that the death of Heinzen's daughter was caused by Heinzen's abuse or neglect. Moreover, this was not the basis for the petition to terminate Heinzen's parental rights.

¶23. We reverse the decision of the District Court terminating Heinzen's parental rights to J.A.B. Should DPHHS conclude that further abuse or neglect proceedings concerning J.A.B. are necessary, it may initiate appropriate proceedings in the District Court.

/S/ J. A. TURNAGE

We concur:

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ JIM REGNIER

No

/S/ KARLA M. GRAY