DA 14-0144

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 251N

IN THE MATTER OF:

A.S.W.,

      Youth in Need of Care.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DN-13-005(C)
Honorable Katherine R. Curtis, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jeanne M. Walker, Hagen & Walker, PLLC; Billings, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Brenda K. Elias, Assistant
Attorney General; Helena, Montana

          Emily Von Jentzen, Assistant Attorney General; Kalispell, Montana

          Ed Corrigan, Flathead County Attorney; Kalispell, Montana

          Submitted on Briefs:  August 13, 2014
                    Decided:  September 16, 2014

Filed:

                         _____
                                Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 A.S.W.'s Mother (Mother) appeals the decision of the Eleventh Judicial District Court, Flathead County, which terminated her parental rights to A.S.W. Mother argues that the District Court erred by taking judicial notice of her previous parental-rights terminations in Cascade County in 2005, that her rights were violated by the State when they failed to provide reunification services, and that the State did not meet its burden of proof for termination of parental rights. We affirm.

¶3 A.S.W. was born in September of 2009 to Mother and birth father, F.W. The Montana Department of Public Health and Human Services (DPHHS) first removed A.S.W. from her parents' home in October 2010 due to unsanitary home conditions. A.S.W. was returned to the home, but after an unannounced home visit in November 2010, A.S.W. was removed again due to the home's unsanitary conditions. Both parents then received extensive services from DPHHS, including one-on-one parenting classes, pursuant to § 41-3-423(1), MCA, which requires DPHHS to make reasonable efforts to prevent removal of a child from a home. A.S.W. was again returned to the home after F.W. completed a treatment plan. That initial case was dismissed in July 2012.

2

¶4 Shortly after the July 2012 dismissal, the family stopped using DPHHS's services. The family left on an extended trip to Arizona and Oregon, which resulted in loss of speech therapy and other services for A.S.W. The family failed to find appropriate housing upon their return to Flathead County. DPHHS investigated the family again in September 2012, after a report that Mother, F.W., and A.S.W. were living in a tent in a family member's yard when temperatures were predicted to drop below 40 degrees at night.

¶5 In November and December of 2012, DPHHS became increasingly concerned with the welfare of A.S.W. Although by this time the family had moved into a motel, Mother was recovering from surgery, and F.W. was not properly assisting Mother with A.S.W.'s care. A.S.W. was in the 10th percentile for weight for her age, not eating much, and 18 of her 20 teeth had cavities. On January 23, 2013, A.S.W. was again removed from her parents' care. On January 29, 2013, DPHHS filed a petition for emergency protective services, and determination that preservation/reunification efforts need not be provided, and for permanent legal custody and termination of parental rights, citing, in part, Mother's prior terminations as cause for the Petition.

¶6 On February 13, 2013, DPHHS filed a motion for the court to take judicial notice of Mother's two previous terminations of parental rights from Cascade County in 2005. Mother objected to the motion, arguing that the previous terminations were not relevant to the present proceeding because she was denied due process at the 2005 proceedings. The 2005 Order from Cascade County stated that Mother completed three parenting classes, but she had not completed her treatment plan. Two clinical psychologists, Dr.

Davis and Dr. Tranel, testified at the 2005 proceedings. The Cascade County District Court found as follows:

9. Dr. Davis and Dr. Tranel testified that due to the mental deficiencies of the Mother and her borderline intellectual functioning, there are no services in existence that would allow the Mother to learn the skills necessary to safely parent either of her children.
10. Dr. Davis and Dr. Tranel testified that the mental deficiencies of the Mother are of a permanent and persistent nature, and it is not possible for her to be rendered a fit parent given these limitations.
11. The conduct or condition of the Mother rendering her an unfit parent is unlikely to change within a reasonable time given the clear and convincing testimony of two clinical psychologists that the Mother cannot assume the role of parent within a reasonable amount of time.

The District Court granted DPHHS's motion and took judicial notice of the 2005 terminations.

¶7 On July 23, 2013, DPHHS amended its initial Petition to include allegations that A.S.W. was subject to chronic, severe neglect. The District Court held a hearing on December 17-18, 2013. At the hearing, nine witnesses testified for DPHHS, including two clinical psychologists and multiple child protection specialists from DPHHS. Ed Trontel, a licensed clinical psychologist, evaluated Mother and determined that "she was unable to function in a fully independent adult fashion." Four witnesses testified for Mother, including A.S.W.'s Court Appointed Special Advocate (CASA), and John Buttram, a licensed clinical counselor. On February 14, 2014, the District Court issued findings of fact and conclusions of law and order, terminating Mother's and F.W.'s parental rights to A.S.W.

¶8 We review a district court's decision to terminate an individual's parental rights for an abuse of discretion. An abuse of discretion occurs when the trial court acts

4

arbitrarily, without employment of conscientious judgment, or exceeds the bounds of reason, resulting in substantial injustice. *In re T.S.B.*, 2008 MT 23, ¶ 17, 341 Mont. 204, 177 P.3d 429. We review a district court's ruling on the admissibility of evidence for an abuse of discretion. *In re S. T.*, 2008 MT 19, ¶ 9, 341 Mont. 176, 176 P.3d 1054.

¶9 We review the trial court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine whether they are correct. A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the court misapprehended the effect of the evidence, or if this Court is left with a definite and firm conviction that the district court made a mistake. *In re E.Z.C.*, 2013 MT 123, ¶ 19, 370 Mont. 116, 300 P.3d 1174.

¶10 "A parent's right to care and custody of a child is a fundamental liberty interest." *In re J.A.B.*, 1999 MT 173, ¶ 14, 295 Mont. 227, 983 P.2d 387 (citing *In Re R.B.*, 217 Mont. 99, 103, 703 P.2d 846, 848 (1985)). Therefore, "when determining whether to terminate parental rights, a district court's factual findings must be made in accordance with § 41-3-609, MCA." *In re S. T.*, ¶ 8. Under § 41-3-609(1)(f), MCA, a court may terminate parental rights upon a finding of clear and convincing evidence that the child has been adjudicated a youth in need of care, the parent has not complied with an approved treatment plan, and the condition or conduct rendering the parent unfit is unlikely to change within a reasonable time.

¶11 Mother argues on appeal that her 2005 termination proceedings denied her due process due to ineffective assistance of counsel; therefore, she contends it was inappropriate for the District Court to take judicial notice of her prior terminations.

However, any objections to the 2005 proceedings should have been appealed within 30 days of the entry of that judgment. M. R. App. P. 4(5)(a)(i) ("In civil cases, including proceedings regarding abused or neglected children under Title 41, Chapter 3, the notice of appeal shall be filed with the clerk of the supreme court within 30 days from the date of entry of the judgment or order from which the appeal is taken.")

¶12 Mother next argues that the District Court should not have taken judicial notice of her prior 2005 terminations under the Montana Rules of Evidence. However, judicial notice may be taken of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." M. R. Evid. 201(b)(2). Judicial notice must be taken "if requested by a party and supplied with the necessary information." M. R. Evid. 201(d). A district court may take judicial notice of "[r]ecords of any court of this state or of any court of record of the United States or any court of record of any state of the United States." M. R. Evid. 202(b)(6). Applying these rules to termination of parental rights proceedings, we have held that "[a] district court, by necessity, must take judicial notice of prior terminations if it is to determine whether those terminations are relevant to the parents' ability to care for the child currently at issue." *In re T.S.B.*, ¶ 35.

¶13 Citing *In re Marriage of Carter-Scanlon*, 2014 MT 97, ¶ 23, 374 Mont. 434, 322 P.3d 1033, Mother argues that the facts underlying the 2005 termination were disputed and "a court may not take judicial notice of fact from a prior proceeding when the fact is reasonably disputed." Mother's reliance on *Carter-Scanlon* is misplaced. In *Carter-Scanlon*, we held that the District Court did not abuse its discretion by refusing to

6

take judicial notice of the facts underlying a Child Support Enforcement Division (CSED) administrative order which calculated the father's annual income because the entire dispute before the District Court was determining the father's annual income. *Carter-Scanlon*, ¶ 24. We held that because the amount of the father's annual income was clearly and reasonably disputed, judicial notice of the amount calculated by CSED was not mandatory under M. R. Evid. 201(d). *Carter-Scanlon*, ¶ 23. However, the District Court took judicial notice of the existence of the CSED order pursuant to M. R. Evid. 202. *Carter-Scanlon*, ¶ 19. In this case, the fact that Mother has prior terminations of parental rights is not clearly and reasonably disputed. To the extent that the District Court considered the circumstances of the prior termination as set forth in the Cascade County District Court's Findings of Fact, we have previously held: "[A] termination under § 41-3-609(1)(d), MCA, requires a court to take judicial notice of prior terminations *and the facts and circumstances surrounding those orders. See* M. R. Evid. 201, 202." *In re T.S.B.*, ¶ 35 (emphasis added).

¶14 In this case, the circumstances of Mother's prior terminations were very similar to the situation with A.S.W. Clinical psychologists in both the 2005 Cascade County case, and in the 2013 Flathead County case testified to Mother's inability to care for her children due to her permanent mental deficiencies. As the Cascade County Court did in 2005, the District Court in this case concluded that no services exist that would allow Mother to learn to care for her children within a reasonable time. Therefore, the District Court did not abuse its discretion by taking judicial notice of Mother's prior terminations.

7

¶15 Mother next argues that her statutory and constitutional rights[1] were violated because the District Court relieved DPHHS from providing reunification services required under § 41-3-423, MCA, in the same court order that called for termination of her parental rights. Regarding Mother's claim that her statutory rights were violated, DPHHS was not required to provide reunification services in this instance because in its first Petition for termination of parental rights, DPHHS requested a determination that preservation or reunification services need not be provided. Section 41-3-422(1)(d), MCA.

¶16 Regarding Mother's due process claim, we have consistently upheld the constitutionality of the termination of parental rights statutes when a parent is given notice and the right to be heard. *In re C.J.*, 2010 MT 179, ¶ 27, 357 Mont. 219, 237 P.3d 1282 (citing *Byrd v. Columbia Falls Lions Club*, 183 Mont. 330, 332, 599 P.2d 366, 367 (1979)). In this case, the December hearing took place almost a year after DPHHS first filed the Petition to terminate, which put Mother on notice of the pending termination and the intent of DPHHS to forgo reasonable efforts at reunification. Mother waived the deadlines for a show cause hearing under § 41-3-432, MCA, to have more time to prepare for a contested hearing. Mother also had the opportunity to present favorable testimony

---

[1] Mother also argued that DPHHS's refusal to offer her reunification services violated her right to equal protection under the Montana and U.S. Constitutions, claiming the decision not to offer her services was based on her intellectual disability. Mother offers no authority or meaningful analysis in support of this argument. "We have repeatedly held that it is not this Court's obligation to conduct legal research on behalf of a party or to develop legal analysis that might support a party's position." *State v. Cybulski*, 2009 MT 70, ¶ 13, 349 Mont. 429, 204 P.3d 7; M. R. App. P. 12(1)(f) (requiring parties to provide authority for their legal arguments in appellate briefs). Therefore, we will not address this claim.

8

at the hearing. Mother had notice and an opportunity to be heard; therefore, her right to due process was satisfied.

¶17 Finally, Mother argues that the District Court did not have clear and convincing evidence to justify the termination of her parental rights. Mother again cites to the judicial notice of the prior terminations as improper evidence to support the termination of her parental rights of A.S.W. She argues that the District Court relied too heavily on the evidence of her intellectual disability, and that there was insufficient evidence that A.S.W. was subject to severe neglect.

¶18 A district court may terminate an individual's parental rights upon a finding by clear and convincing evidence that a parent has subjected a child to "severe neglect." Section 41-3-423(2)(a), MCA; § 41-3-609(1)(d), MCA. A prior termination of parental rights under circumstances "relevant to the parent's ability to adequately care for the child at issue," can also be cause for termination of parental rights. Section 41-3-423(2)(e), MCA; § 41-3-609(1)(d), MCA. It should be noted that the same factors, including severe neglect of the child and prior terminations, are considered when determining that DPHHS is no longer obligated to provide a family with reasonable efforts at reunification. Section 41-3-423(2)(a)–(e), MCA.

¶19 Shortly after the previous case against Mother and F.W. was dismissed, they ceased using all services that helped them care for A.S.W. Less than three months later, A.S.W. was found living in an unsafe environment and Mother was struggling to maintain her own hygiene. In this case, DPHHS proved by clear and convincing

9

evidence that A.S.W. had been subject to neglect, and the neglect was the result of the same circumstances as Mother's prior terminations.

¶20 Mother contends, witnesses testified, and DPHHS does not dispute, that Mother clearly loves A.S.W. However, based on the abundant evidence presented, which the District Court properly considered, the District Court did not abuse its discretion in determining that termination of Mother's parental rights is in the best interest of A.S.W.

¶21 We have determined to decide this case pursuant to Section I, Paragraph 3(d), of our Internal Operating Rules, which provides for noncitable memorandum opinions. The issues in this case are ones of judicial discretion and there clearly was not an abuse of discretion.

¶22 Affirmed.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE